**Archbishop Edwin F. O'BRIEN, Archbishop of Baltimore and His Successors in Office, a Corporation Sole, et al., Plaintiffs**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al., Defendants.**

**Civil Action No. MJG–10–760.**

United States District Court, D. Maryland.

Jan. 28, 2011.

David William Kinkopf, Steven G. Metzger, Gallagher Evelius and Jones LLP, Peter Joseph Basile, Ferguson Schetelich and Ballew PA, Baltimore, MD, Mark Leonard Rienzi, Columbus School of Law, Washington, DC, for Plaintiffs.

Suzanne Sangree, City of Baltimore Law Department, Baltimore, MD, Stephanie Toti, New York, NY, for Defendants.

## DECISION & ORDER

MARVIN J. GARBIS, District Judge.

The Court has before it Plaintiffs' Motion for Partial Summary Judgment [Document 9], Defendants' Motion to Dismiss [Document 11], and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

## I. INTRODUCTION

The Greater Baltimore Center for Pregnancy Concerns, Inc. (the "CENTER") provides pregnancy-related counseling. The CENTER operates at locations within Baltimore City and is provided space, rent-free, by Archbishop Edwin F. O'Brien, Archbishop of Baltimore and His Successors in Office, A Corporation Sole. (the "Archbishop") and St. Brigid's Roman Catholic Congregation, Inc. ("St. Brigid's"). The CENTER will not, for religious reasons, provide or refer for abortions or specific methods of birth-control that are contrary to the views of the Cath-

olic Church.[1]

On December 4, 2009, the City of Baltimore enacted Ordinance 09–252 (the "Ordinance").[2] The Ordinance is directed toward any organization[3] that provides information about pregnancy-related services but does not provide or refer for abortions or certain types of birth-control services. Under the Ordinance, such an organization—referred to as a "limited-service pregnancy center"—must post a conspicuous sign in its waiting room notifying its clients that the center "does not provide or make referral for abortion or birth-control services."[4]

As discussed herein, the Court holds that the Ordinance violates the Freedom of Speech Clause of Article I of the Constitution of the United States and is unenforceable. Whether a provider of pregnancy-related services is "pro-life" or "pro-choice," it is for the provider—not the Government—to decide when and how to discuss abortion and birth-control methods. The Government cannot, consistent with the First Amendment, require a "pro-life" pregnancy-related service center to post a sign as would be required by the Ordinance.

## II. *PROCEDURAL SETTING*

The CENTER, the Archbishop, and St. Brigid's (collectively "Plaintiffs") have filed the instant lawsuit, seeking to enjoin enforcement of the Ordinance. Plaintiffs, contending that the Ordinance is facially invalid, assert claims against the Mayor and City Council of Baltimore, Stephanie Rawlings–Blake, in her official capacity as Mayor of Baltimore, and Olivia Farrow Esq., in her official capacity as acting Baltimore City Health Commissioner (collectively "Defendants").[5] Plaintiffs' Complaint for Declaratory and Injunctive Relief presents four Counts:

Count I. First Amendment (Free Speech and Assembly)

Count II. First Amendment (Free Exercise of Religion)

Count III. Fourteenth Amendment (Equal Protection)

Count IV. Maryland Code[6] (Conscience Clause)

By the pending motions, Defendants seek (1) dismissal of claims made by the Archbishop and St. Brigid's pursuant to Rule 12(b)(1)[7] due to a lack of standing and (2) dismissal of all claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs, on the other hand, seek summary judgment pursuant to Rule 56 on their claims contained in Counts I and III.

### A. *Dismissal Standard*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that

---

1. Each employee of the CENTER must sign a statement affirming his or her Christian faith and the belief that abortion is immoral.

2. *See* BALT. CITY HEALTH CODE §§ 3–501 to 3–506 (2010).

3. Whose primary purpose is to provide pregnancy related services.

4. *Id.* at § 3–502(A).

5. Plaintiffs also named the Baltimore City Health Department as a defendant but agree that claims against the Baltimore City Health Department be dismissed without prejudice (Pls.' Opp'n in [Document 17] at 34).

6. MD. CODE ANN., HEALTH-GEN. § 20–214 (West 2011)

7. All "rule" references herein are to the FEDERAL RULES OF CIVIL PROCEDURE.

the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.* A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Id.* (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).

### B. *Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present *evidence* of specific facts from which the finder of fact could reasonably find for him or her." *Mackey v. Shalala,* 43 F.Supp.2d 559, 564 (D.Md. 1999) (emphasis added). When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Rule 1 of the Federal Rules of Civil Procedure).

### C. *Standard Applicable*

Defendants seek dismissal of all Counts, while Plaintiffs seek summary judgment on Counts I (Free Speech and Assembly) and III (Equal Protection). In their presentations regarding these Counts both sides have submitted and/or relied upon materials from outside of the Complaint. Rule 12(d), provides that, in the context of a motion to dismiss, "if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. PRO. 12(d).

Accordingly, as to Counts I and III, the parties' respective motions shall be treated as cross-motions for summary judgment. Moreover, in view of the absence of any genuine issues of material fact with respect to these Counts, resolution of the claims therein by summary judgment is appropriate.

### D. *Rule 56(f)*

■ Summary judgment is appropriate only "after adequate time for discovery." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Defendants assert that summary judgment would be premature because they have not had an adequate opportunity to conduct discovery or fully develop expert testimony, this despite having passed the Ordinance in December 2009. Specifically, Defendants seek discovery regarding the harm the Ordinance seeks to address, the commercial nature of Plaintiffs' activities, as well as actual evidence of deceptive advertising. (*See* Defs.' Reply [Document 18], Ex. 6 ¶ 3–6).

■ Defendants may not, however, use discovery in an attempt to generate justifications for the Ordinance following its enactment. The requisite scrutiny is not satisfied through the use of post-hoc justifications created after the start of litigation. *See U.S. v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (noting that the government's justification, even under intermediate scrutiny, may not be "invented post-hoc in response to litigation").

In the instant case, the Court must examine whether the Ordinance, on its face, is subject to, and satisfies, the applicable level of scrutiny. The Court must base its decision on the evidence relied on by the Baltimore City Council at the time the Ordinance was passed.

### III. *DISCUSSION*

### A. *Plaintiffs*

At all times relevant hereto, the CENTER has offered pregnancy-related services at locations within Baltimore City. The CENTER presents classes in prenatal development, parenting, and life skills. The CENTER offers its clients bible study, pregnancy testing, sonograms, prenatal vitamins, and mentoring. The CENTER also provides information on "Catholic compliant" birth-control techniques such as abstinence and natural family planning. The CENTER will not, under any circumstances, provide or refer for abortions or certain methods of birth-control.

As stated above, Plaintiffs, the Archbishop and St. Brigid's allow the CENTER to use facilities on their respective premises rent-free.

### B. *The Ordinance*

Ordinance 09–252, enacted by the City of Baltimore on December 4, 2009, provides, in pertinent part:

A limited-service pregnancy center must provide its clients and potential clients with a disclaimer substantially to the effect that the center does not provide or make referral for abortion or birth-control services.

*Id.* § 3–502(A).

The Ordinance further provides:

The disclaimer required by this section must be given through 1 or more signs that are:

(1) written in English and Spanish;

(2) easily readable; and

(3) conspicuously posted in the center's waiting room or other area where individuals await service.

*Id.* § 3–502(B).

The Ordinance defines a "limited-service pregnancy center" as:

(1) Any person whose primary purpose is to provide pregnancy related services; and

(2) Who:

(I) For a fee or as a free service, provides information about pregnancy-related services; but

(II) Does not provide or refer for:

(A) Abortions; or

(B) Nondirective and comprehensive birth-control services.

*Id.* § 3–501.

The Ordinance does not include a definition of "nondirective and comprehensive birth-control services." However, prior to the hearing in the instant case, the Baltimore City Health Department had defined "nondirective comprehensive (*sic*) birth-control services" as including "birth-control services which only a licensed healthcare professional may prescribe or provide but may also include other birth-control services." As became apparent at the hearing, this "definition" was essentially useless. Following the hearing, Defendants provided a "corrected" definition for the term "nondirective and comprehensive birth-control services" as including "birth-control services which only a licensed healthcare professional may prescribe or provide." Inasmuch as Plaintiffs seek prospective relief, the Court will utilize the "corrected" definition herein. Therefore, the Ordinance's disclaimer requirements apply to any pregnancy service center that will not provide or refer for abortions and certain physician provided birth-control methods.

The Ordinance authorizes the Baltimore City Health Commissioner to issue a no-

tice to any limited-service pregnancy center that is in violation of the Ordinance, directing the center to correct the violation within 10 days. *Id.* § 3–53. Failure to comply with a violation notice is punishable by the issuance of an environmental or civil citation, each of which carries a penalty of $150.[8] *Id.* at § 3–506; BALT. CITY HEALTH CODE ART. I, §§ 40–14, 41–14.

C. *Standing*

■ Defendants contend that the Archbishop and St. Brigid's lack standing to bring the instant case. Standing to sue requires (1) the existence of a concrete and particularized injury in fact; (2) a causal connection between the injury suffered and the conduct complained of; and (3) that a favorable adjudication would redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The evidence of record does not establish that the CENTER operated in any capacity other than separately and apart from the Archbishop and St. Brigid's. The Archbishop and St. Brigid's are not, and do not operate, limited-service pregnancy centers subject to the Ordinance. Rather, they allow the CENTER—which is subject to the Ordinance—to utilize a portion of their respective facilities free of charge. The Ordinance does not require the Archbishop and St. Brigid's to take any action and does not subject them—as landlords—to liability for their tenant's failure to post a required sign in the space utilized by the CENTER.

The Archbishop and St. Brigid's contend that they will suffer a "concrete and particularized injury" because the required

---

**8.** A non-compliant pregnancy center may also be subject to a criminal misdemeanor charge under Health Article § 2–211. If convicted of the misdemeanor, the pregnancy center is subject to a fine of $200, plus $50 for each day the offense continues. The non-payment of fines could result in the pregnancy center being held in contempt of court. BALT. CITY CODE ART. I, §§ 40–41.

signs would be attributed to them. The Court finds speculative, at best, the contention that a sign required by the Ordinance on the CENTER's wall will be attributed to the landlord. Indeed, the sign refers to the services provided by *the CENTER* and would have no reference to the owner of the building in which the CENTER operates.

Certainly, the Archbishop and St. Brigid's share the CENTER's beliefs regarding birth-control and strongly object to an Ordinance compliant sign posted in the CENTER. The Court does not find, however, that the CENTER's compliance with the Ordinance would cause Archbishop and St. Brigid's "concrete and particularized injury in fact" so as to meet the *Lujan* test for standing.

Accordingly, the Court concludes that it must dismiss all claims made by the Archbishop and St. Brigid's for lack of standing. However, the Court finds it appropriate to allow the Archbishop and St. Brigid's to participate in the instant case as amici curiae. Also, for the sake of consistency, the Court shall, herein, refer to the positions taken by the amici and the CENTER, as those of "Plaintiffs."

### D. *Freedom of Speech*

■■ Freedom of speech "is the matrix, the indispensible condition, of nearly every other form of freedom." *Palko v. Connecticut*, 302 U.S. 319, 327, 58 S.Ct. 149, 82 L.Ed. 288 (1937) (Cardozo, J.). The First Amendment, as applied to the states by the Fourteenth Amendment, prohibits regulations "abridging the freedom of speech." U.S. CONST. amend. I. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct.

1700, 152 L.Ed.2d 771 (2002) (internal quotation marks and citations omitted). Accordingly, the government cannot inhibit, suppress, or impose differential content-based burdens on speech. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641–642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

■ The Ordinance regulates speech. The Ordinance applies to limited-service pregnancy centers whose primary mission is to provide information on topics relating to pregnancy and birth-control. It is true that the Ordinance does not directly regulate the content of a limited-service pregnancy center's speech in the sense of restricting what it can say. However, requiring the placement of a "disclaimer" sign in the center's waiting room is, on its face, a form of compelled speech. Moreover, the Ordinance regulates the center's speech by mandating the timing and content of the introduction of the subjects of abortion and birth-control.

#### 1. *Level of Scrutiny*

■ The parties disagree as to whether the Ordinance is subject to strict scrutiny review. Strict scrutiny review, in the context of the First Amendment, requires that a speech regulation "be narrowly tailored to promote a compelling Government interest" and "if a less restrictive alternative would serve the governments purpose, the legislature must use that alternative." *U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

■ Plaintiffs contend that the Ordinance is subject to strict scrutiny review for two principal reasons. First, the Ordinance regulates non-commercial speech by compelling a disclosure relating to abortion and birth-control information. Second, the Ordinance regulates speech based on Defendants' disagreement with Plaintiffs'

viewpoint and ideology. Defendants argue that the Ordinance is subject to a lower level of scrutiny because it regulates strictly commercial speech and is viewpoint-neutral.

### a. Commercial or Non–Commercial Speech

■ In determining the appropriate level of scrutiny, this Court must analyze the nature of speech regulated by the Ordinance. Plaintiffs contend that strict scrutiny should apply as the Ordinance compels a disclaimer introducing the topic of abortion, thus regulating Plaintiffs' non-commercial speech. Regulations which restrict or mandate non-commercial speech receive greater scrutiny than those governing purely commercial speech. *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).

■ Defendants argue that the Ordinance regulates speech that is commercial in nature. Laws that compel or regulate commercial speech are permissible if their "disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, —— U.S. ——, 130 S.Ct. 1324, 1339–40, 176 L.Ed.2d 79 (2010); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (addressing the regulation of attorney advertising via disclaimers).

The Supreme Court has defined commercial speech as speech that proposes a commercial transaction. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60,

64–68, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). Commercial speech has also been defined as "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

Defendants claim that the commercial transaction at issue is the CENTER'S offer of valuable goods and services to pregnant women. The goods and services offered include pregnancy women. The goods and services offered include pregnancy tests, sonograms, and options counseling.

Under both *Bolger* and *Central Hudson*, the speech regulated by the Ordinance is not commercial speech. The overall purpose of the advertisements, services, and information offered by the CENTER is not to propose a commercial transaction, nor is it related to the CENTER's economic interest. The CENTER engages in speech relating to abortion and birth-control based on strongly held religious and political beliefs rather than commercial interests or profit motives. The notion that "human life must be respected and protected absolutely from the moment of conception" is a central tenet of the CENTER's belief system. *See Catechism of the Catholic Church*, Art. Five §§ 2258–2330. [Document 24 Ex. 1]

■ The CENTER offers services that have value in the commercial marketplace. However, the offering of free services [9] such as pregnancy tests and sonograms in furtherance of a religious mission fails to equate with engaging in a commercial

---

9. Determining whether speech is commercial does not depend on the speaker's status as a non-profit entity, but rather on the nature of the transaction proposed by the speaker. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). *See also Virginia Vermiculite Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541 (4th Cir.1998) (explaining "the dispositive inquiry is whether the transaction is commercial, not whether the entity engaging in the transaction is commercial").

transaction. Were that the case, any house of worship offering their congregants sacramental wine, communion wafers, prayer beads, or other objects with commercial value, would find their accompanying speech subject to diminished constitutional protection.

The nature of speech regulated by the Ordinance bears little resemblance to the speech at issue in *Milavetz* [10] and *Zauderer*. Both *Milavetz* and *Zauderer* addressed the regulation of highly commercial activities relating to attorney advertisements, most notably offering legal services for a fee. In regard to the disclaimer requirements on transactions proposed in the attorney advertisements, only economic interests were impacted. In sharp contrast, the disclaimer mandated by the Ordinance introduces the topics of abortion and birth-control. This has an immediate effect on any speech and information offered by the CENTER on these subjects. The nature of information transmitted by the CENTER includes, by any measure, speech generally afforded the highest level of constitutional protection.

Even if the Court were to assume that the CENTER's speech includes some commercial elements, strict scrutiny would nonetheless apply. The Supreme Court has held that "we do not believe that speech retains its commercial character when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (overturning a law requiring professional fundraisers to disclose to potential donors the percentage of charitable contributions collected that were actually turned over to charity).

The dialogue between a limited-service pregnancy center and an expectant mother begins when the client or prospective client enters the waiting room of the center. Contemporaneous with the center's initial communication is the presence of a stark and immediate statement about abortion and birth-control. Contrary to Defendants' assertion, the disclaimer indeed alters the course of a center's communications with a client or prospective client about abortion and birth-control.

Defendants claim that the terms of the disclaimer apply only to the purported commercial components of Plaintiffs' speech. This argument is unavailing. The Supreme Court has held that commercial and non-commercial elements of speech "cannot be separated or parceled out, applying one standard of review to one phrase, and another test to another phrase." *Id.* at 796, 108 S.Ct. 2667. At the very least, a disclaimer conspicuous to anyone visiting the CENTER regarding the lack of abortion and birth-control services, mandates the inclusion of a government message concurrent, and intertwined with, Plaintiffs' delivery of fully protected speech.

Accordingly, the Court concludes that the Ordinance regulates the Plaintiffs' fully protected non-commercial speech so that strict scrutiny is triggered.

### b. *Lack of Viewpoint Neutrality*

Under well established First Amendment principles, the "government must abstain from regulating speech when the specific motivation, ideology, or the opinion of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

---

**10.** In *Milavetz,* the parties agreed that the challenged provisions only regulate commercial speech. 130 S.Ct. at 1339.

Thus, viewpoint-based discrimination is considered a particularly offensive form of content-based discrimination.

Plaintiffs contend that the very terms of the Ordinance impermissibly regulate only those who speak about pregnancy-related services from a particular disfavored viewpoint. Defendants assert that the Ordinance applies to any persons offering pregnancy-related information including Lamaze instructors, maternity clothing retailers, lactation consultants, et cetera. (Mot. Hr'g Tr. 5:17). However, the Ordinance is applicable only to those who will *never* provide or refer for abortion or birth-control services. Such a qualification limits the application of the Ordinance primarily (if not exclusively) to those with strict moral or religious qualms regarding abortion and birth-control.

The CENTER's viewpoint, formed on the basis of sensitive religious, moral, and political beliefs, is the overarching reason for its stark refusal to perform or refer for abortions and certain types of birth-control. Under the First Amendment, a government cannot "impose special prohibitions on those speakers who express views on [governmentally] disfavored subjects." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 391, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Defendants contend that even though the Ordinance applies only to limited-service pregnancy centers who are opposed to abortions and certain methods of birth-control, its purpose is to mitigate the effect of deceptive advertising, not to express disagreement with a particular viewpoint.[11] In support, Defendants point to the legislative record compiled during consideration of the Ordinance as evidence [12] that certain limited-service pregnancy centers engage in deceptive advertising in order to attract women seeking abortions and comprehensive birth-control services to their facilities. Moreover, certain limited-service pregnancy centers proceed to employ delay tactics in an effort to dissuade women from accessing those services. The Supreme Court has stated that "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of partisans on one side of a debate is without support." *Hill v. Colorado,* 530 U.S. 703, 724, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).

In *Hill,* the Supreme Court found constitutional a Colorado statute creating a 100–foot buffer zone around medical facilities. The statute prohibited all unwanted approaches within eight feet of anyone inside the buffer zone. The Court found that that "the principal inquiry in determining content neutrality, in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hill,* 530 U.S. at 719, 120 S.Ct. 2480 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

11. It is worth noting that during consideration of the Ordinance, an amendment was offered requiring pro-life and pro-choice pregnancy centers alike to provide disclosures regarding the services offered. The amendment was defeated by a 10 to 5 margin. (Pls.' Mot. [Document 9], Ex. E).

12. A principal component of the evidence presented to the Baltimore City Council regarding deceptive advertising was a 2006 report released by U.S. Representative Henry Waxman. *See* Minority Staff, Special Investigations Division, Committee on Government Reform, U.S. House of Representatives, FALSE AND MISLEADING HEALTH INFORMATION PROVIDED BY FEDERALLY FUNDED PREGNANCY RESOURCE CENTERS at 1–2 (2006). (Defs. Surreply [Document 27], Ex. 1).

The statute in *Hill,* however, is not analogous to the Ordinance. The Supreme Court held that the speech restricted in *Hill* was content and viewpoint neutral because the statute "was concerned with the safety of individuals seeking wide ranging health care services, not merely abortion counseling and procedures." *Hill,* 530 U.S. at 714, 120 S.Ct. 2480. In contrast, the Ordinance applies exclusively to information communicated at limited-service pregnancy centers, not, as did the statute in *Hill,* to any type of speech communicated at every health care facility in the jurisdiction.

It is revealing that Defendants refer to the Ordinance as a means of mitigating the "harm" caused by Plaintiffs' underlying "propaganda" speech relating to abortion and contraception. (Defs.' Reply [Document 18], at 9). Such descriptions can only support the conclusion that Defendants enacted the Ordinance out of disagreement with Plaintiffs' viewpoints on abortion and birth-control.

In sum, the Ordinance regulates fully protected non–commercial speech and is based, at least in part, on disagreement with the viewpoint of the speaker. Therefore, the Ordinance is subject to strict scrutiny review.

### c. *Application of Strict Scrutiny*

■ Strict scrutiny review is a standard traditionally used when examining regulations of fully protected speech rather than the 'exacting scrutiny' standard described in *Citizens United v. Fed. Election Comm'n,* —— U.S. ——, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (addressing a First Amendment Challenge to political campaign laws).

■ Any statute that regulates protected speech is presumptively invalid and the government bears the burden to rebut that presumption. *Playboy Entm't,* 529 U.S. at 817, 120 S.Ct. 1878. However, a statute that regulates speech may comply with the First Amendment if the statute is "narrowly tailored to promote a compelling government interest." *Id.* at 813, 120 S.Ct. 1878. A statute is not narrowly tailored if a "less restrictive alternative would serve the Government's purpose." *Id.* Thus, in assessing whether a statute is narrowly tailored, the Court must determine whether "the challenged regulation is the least restrictive means among available effective alternatives." *Ashcroft v. ACLU,* 542 U.S. 656, 666, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004). Defendants burden to "demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." *City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

■ Defendants assert that the Ordinance is both narrowly tailored and promotes a compelling government interest. The Ordinance advances the Defendants' interest in protecting and informing women seeking abortion and comprehensive birth-control services from misleading advertisements. Defendants seek to limit the incentive for limited-service pregnancy centers to engage in deceptive advertising by posting a disclaimer in their waiting areas.

The legislative record, however, is uneven when demonstrating the depth and severity of the problem relating to limited-service pregnancy centers and deceptive advertising. The record reflects only sporadic instances of limited-service pregnancy centers engaging in deceptive advertising.

Balancing the governmental interests in providing the fullest level of disclosure to women entering a limited-service pregnancy center against protecting Plaintiffs'

First Amendment rights is a difficult endeavor. However, the Court will assume, for purposes of discussion, that the Ordinance was enacted in response to a compelling governmental interest. Nevertheless, Defendants need to demonstrate that the Ordinance is narrowly tailored, ensuring that no less restrictive alternatives are available.

Defendants contend that the Ordinance's disclaimer requirement is narrowly tailored, truthful,[13] and only a *de minimis* burden on Plaintiffs' right to free speech. However, the disclaimer requirement mandated by the Ordinance falls considerably short of meeting the "narrowly tailored" standard.

By no means is the disclaimer requirement the least restrictive means of combating false advertising. Defendants claim that in passing the Ordinance, they seek only to mitigate the impact of deceptive advertising. Yet the Ordinance does not provide a "carve-out" provision for those limited-service pregnancy centers which do not engage in any deceptive practices. The disclaimer requirement is imposed irrespective of how forthcoming and transparent a pregnancy center presents itself.

In lieu of the disclaimer mandate of the Ordinance, Defendants could use or modify existing regulations governing fraudulent advertising to combat deceptive advertising practices by limited-service pregnancy centers. Such an alternative was suggested in *Riley* where the Supreme Court noted that instead of mandating a disclaimer requirement, "the state may vigorously enforce its anti-fraud laws." 487 U.S. at 800, 108 S.Ct. 2667.

Defendants claim that existing anti-fraud regulations do not apply to Plaintiffs, as the regulations are limited to "any person, firm or corporation that offers *for sale* merchandise, commodities, or service." BALT. CITY CODE ART. II, § 4–1 (2003) (emphasis added). However, subjecting pregnancy centers to existing anti-fraud provisions would require only minor modifications. Alternatively, Defendants could enact a new content-neutral advertising ordinance applicable to noncommercial entities that directly ameliorate the Defendants' concerns regarding deceptive advertising.

In sum, the Court holds that the Ordinance does not meet the strict scrutiny standard. Accordingly, Plaintiffs are entitled to summary judgment with regard to their Freedom of Speech claim in Count I.

E. *Additional Claims*

In addition to their Freedom of Speech claim, Plaintiffs assert, in Count I (Free Assembly), Count II (Free Exercise), Count III (Equal Protection), and Count IV (State Conscience Provision) that the Ordinance should be held unenforceable. These claims are moot in light of the Court's grant of summary judgment on Plaintiffs' Freedom of Speech claim in Count I. Moreover, to an extent, some contentions pertinent to Counts II and III have been considered as intertwined with

---

**13.** Plaintiffs assert that the disclaimer forces them to state untruthfully that the CENTER "does not provide or make referral for abortion or birth-control services" when in fact the CENTER promotes abstinence and natural family planning as effective birth-control techniques. Defendants contend that the Ordinance allows for flexibility in phrasing the disclaimer. Those subject to the disclaimer requirement must only indicate "substantially to the effect" that they do not provide or refer for abortions or [certain] birth-control methods, leaving open the ability to list the services they actually offer as exceptions to the general disclaimer. The Court would note that such an "exception" statement would increase the effect of the disclaimer upon a center's freedom of speech by highlighting (in a negative manner) those birth-control methods the center supports.

contentions regarding Plaintiffs' Freedom of Speech claim in Count I. *Cf. Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (addressing Equal Protection as a component of First Amendment interests).

As to Count IV, it appears that there may be genuine issues of material fact that would prevent summary judgment for either side. Moreover, Count IV raises significant issues of first impression under state law that need not, and should not, first be addressed by this Court unless absolutely necessary.

Under the circumstances, the Court shall dismiss without prejudice, Plaintiffs' Freedom of Assembly claim in Count I and all claims in Counts II, III, and IV.

## IV. *CONCLUSION*

For the foregoing reasons:

1. Plaintiffs' Motion for Partial Summary Judgment [Document 9] is GRANTED IN PART AND DENIED IN PART.

2. Defendants' Motion to Dismiss [Document 11] is GRANTED IN PART AND DENIED IN PART.

3. All claims asserted by Plaintiffs Archbishop Edwin F. O'Brien and St. Brigid's Roman Catholic Congregation are DISMISSED due to lack of standing.

4. Plaintiff Greater Baltimore Center for Pregnancy Concerns is GRANTED summary judgment on Count I (Free Speech).

5. Plaintiffs' Freedom of Assembly claim and all claims in Counts II, III, and IV are DISMISSED WITHOUT PREJUDICE.

6. A Permanent Injunction and Judgment shall be entered by separate Orders.