NIEMEYER, Circuit Judge,
dissenting:
Baltimore City Ordinance 09-252 mandates that pregnancy centers that do not offer abortions or refer for abortions must post one or more signs in their waiting rooms, stating that they “do[ ] not provide or make referral for abortion or birth-control services.” On the plaintiffs’ assertion that such a sign requires them to speak contrary to their moral and religious beliefs, the district court held, as a matter of law, (1) that the ordinance, on its face, compels speech that is not content neutral; (2) that such compelled speech is subject to strict scrutiny; and (3) that the ordinance is not narrowly tailored to serve the City’s stated interest in prohibiting such pregnancy centers, as a health concern, from misrepresenting information about abortions. It thus found the ordinance unconstitutional.
*298 A ruling of this kind does not implicate a need to have discovery of factual circumstances, as the majority opinion orders, because every point on which the district court’s ruling depended was a question of law that construed the ordinance on its face and assessed its scope against well-established First Amendment principles. In determining to vacate the district court’s order and remand the case, the majority opinion addresses a case not before us. The opinion fails in three fundamental respects.
First, it fails to address the actual holding of the district court insofar as the district court applied established legal principles to conclude, as a matter of law, that the ordinance was unconstitutional. Rather, it dismisses the district court’s ruling as “laden with error,” pointing to a raft of circumstantial factual questions, irrelevant to the necessary legal propositions, and concluding that the legal issues therefore cannot be resolved by summary judgment.
Second and more fundamentally, it fails to recognize the scrutiny applicable to regulations that compel speech — regulations that require a person to say that with which the person would not otherwise say and might well disagree. Such regulations are among the most pernicious invasions of First Amendment rights, and for that reason, they are subject to “the most exacting scrutiny.” Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 641-42, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Although distinct from laws that regulate what persons have chosen to say, regulations that compel people to speak the government’s message are equally invasive of our most basic freedom. Id. “Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech.” See Riley v. Nat’l Fed. of the Blind of N.C., Inc., 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). And because it is “content-based,” it is subject to strict scrutiny. Turner Broadcasting, 512 U.S. at 642, 114 S.Ct. 2445. Indeed, “[c]ontent-based [speech] regulations are presumptively invalid.” R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (emphasis added). The majority opinion not only fails to recognize these principles, it does not even discuss “compelled speech.” Rather, it implies, by its silence on the subject, that compelled speech or content-based speech, when including potentially commercial speech, is subject to a relaxed level of scrutiny, a position never countenanced by the Supreme Court.
And third, it fails to recognize that the challenge addressed by the district court was the plaintiffs’ facial challenge. In an effort to identify questions of fact to support its remand, the opinion ignores the issue presented — i.e., whether a facial review would render the ordinance unconstitutional — and recharacterizes the proceeding as an as-applied challenge. With that erroneous maneuver, it concludes that facts need to be developed to conduct such an as-applied challenge. Ante, at 282 (“But to properly employ an as-applied analysis, the court was obliged to first afford the City discovery”). To be sure, the complaint challenged the ordinance both facially and as-applied, but the plaintiffs argued before the district court that on Count I (violation of free speech), the court could rule on the ordinance “as a facial matter.” And in its opinion, the district court accepted this, repeating that in the plaintiffs’ claims against the City, the plaintiffs “contend[ed] that the Ordinance [was] facially invalid.” O’Brien v. Mayor & City Council of Baltimore, 768 F.Supp.2d 804, 808 (D.Md.2011). The court then proceeded to address the case as a facial challenge, stating, “In the instant case, the Court must examine wheth *299 er the Ordinance, on its face, is subject to, and satisfies, the applicable level of scrutiny.” Id. at 810 (emphasis added).
Thus, to conclude that the district court’s holding was “laden with error,” ante, at 271, the majority opinion itself is error-laden, giving the governing core principles the back of the hand and broadening, by recharacterization, the issues so as to be able to conclude that the City should have been given the opportunity to engage in discovery, even as to subjects that would be irrelevant or unnecessary to the legal questions decided by the district court. It is apparent that the majority opinion, which is some 50 typewritten pages, roams in supposition about what pregnancy centers that do not offer abortion have said to their clients; about whether their advice could have been commercial in nature; and about the facts that might have been misrepresented, as identified by pro-choice groups in their stated policy positions. For example, the majority opinion quotes at length: (1) the Wax-man report, which suggests the pregnancy centers “often mask their pro-life mission” to mislead pregnant women; (2) the report of the NARAL Pro-Choice Maryland Fund that pregnancy centers give “wildly inaccurate information” about abortion; (3) the legislative testimony of a woman who stated she had “felt tricked” by a pregnancy center 16 years before; and (4) the legislative testimony of a professor who stated that she was “distressed by the existence of centers” that misrepresent their mission. The majority sets forth no similar evidence provided by the plaintiffs, yet it relies on the City’s claimed need to respond to the plaintiffs’ facts.
In its gratuitous shaping of the issues, the majority also devotes pages to speculation about whether the ordinance regulates commercial speech or noncommercial speech — failing to recognize that, on its face, the ordinance regulates both. The majority’s position is curious in view of the fact that it has today affirmed the district court’s conclusion in Centro Tepeyac that a similar Montgomery County, Maryland provision compelled noncommercial speech and that any commercial speech was intertwined with regulated noncommercial speech. See Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, at 192, No. 11-1314(L), 2013 WL 3336825 (4th Cir. July 3, 2013) (en banc) (observing that the district court “demonstrated a firm grasp of the legal principles”). Here, in contrast, the majority concludes that resolution of the question must be “fact-driven.” It states, “Without all the pertinent evidence — including evidence concerning the Center’s economic motivation (or lack thereof) and the scope and content of its advertisements — we cannot properly analyze the speech regulated by the Ordinance.” Ante, at 286. But this speculation is irrelevant because Ordinance 09-252 regulates both commercial and noncommercial speech and addresses all persons who provide pregnancy services without providing abortions or referring for abortions.
Were our court grappling with the abortion issue itself, the majority’s fulsome and overstated facts might mean something. But the case before us presents the much narrower question about the scope of the ordinance on its face. It appears that the majority has become seduced by its own elaboration of abortion policy from the viewpoint of some interested groups, thereby blinding it from the narrow legal issue raised by the terms of the ordinance.
The district court, on the other hand, correctly focused on the relevant legal issue and, in a reasoned fashion, supported its holding by analyzing the ordinance’s language. To be sure, the district court engaged hypothetically from time to time in discussion about the potential relevance *300 of facts, but it quickly left them, recognizing that the well-established First Amendment principles on which it relied provided for a resolution of the issue as a matter of law. As it stated, “In the instant case, the Court must examine whether the Ordinance, on its face, is subject to, and satisfies, the applicable level of scrutiny.” O’Brien, 768 F.Supp.2d at 810 (emphasis added). And from the language of the ordinance, it concluded that the strict-scrutiny standard applied and that the ordinance did not meet that standard. Nowhere did the district court consider or decide an as-applied review.
I respectfully submit that under the well-established First Amendment principles relating to compelled speech, Baltimore City Ordinance 09-252 cannot, on its face, withstand strict scrutiny. The ordinance is content-based, telling a person, not otherwise regulated, what to say to a client, even though the person may disagree with the speech and would not otherwise say what is commanded. The mandate is imposed on all pregnancy centers not providing or referring for abortion, whether they are commercial or noncommercial or whether they provide services for free or for a fee. Although the City may have a compelling interest in prohibiting the misrepresentation of information about abortion, as it claims, the ordinance on its face does not prohibit misrepresentation. Indeed, it mandates speech regardless of whether the pregnancy center misrepresents or not. These statutorily based observations lead to the legal conclusion that the ordinance is overbroad and therefore unconstitutional. To reach that conclusion does not require discovery of the circumstantial facts about how the ordinance might apply in any given circumstance. I conclude that the majority’s decision to remand for the development of irrelevant facts is simply misguided.
The district court’s decision should be affirmed.
I
By way of background, the City of Baltimore enacted Ordinance 09-252 in December 2009, regulating all pregnancy centers that provide pregnancy related services for free or for a fee and that either do not provide abortions or refer for abortions. The ordinance requires each one of those centers to post one or more signs in its waiting room stating that the center “does not provide or make referral for abortion or birth-control services.”
The legislative record indicates that the President of the Baltimore City Council introduced Bill 09-0406 (the future Ordinance 09-252) after meeting with abortion-rights advocacy groups. Those groups complained that some pregnancy clinics provide inaccurate information to women about abortions. A spokesperson for the City Council President explained in a public statement: “The bill deals with whether women are told up front what the facts are. Women need to know up front what to expect when they go into these centers.” The “Bill Synopsis” presented to the City Council stated that the Bill was “introduced because of the ‘importance of choice.’ ” And the Baltimore City Health Department backed the Bill, based on the “purpose of the bill to require limited-service pregnancy centers to provide accurate information about available services to clients and potential clients.” (Emphasis added). The Bill was enacted in November and became law on December 4, 2009.
In March 2010, before any enforcement of Ordinance 09-252, the Archbishop of Baltimore, St. Brigid’s Roman Catholic Church, and the Greater Baltimore Center for Pregnancy Concerns, Inc. (“the Pregnancy Center”) commenced this action *301 against the Mayor and City Council of Baltimore, challenging the constitutionality of the ordinance and alleging that it violates the Free Speech and Free Assembly Clauses of the First Amendment, the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Conscience Clause in Maryland Code Ann., Health-Gen. § 20-214(a).
The complaint alleges that the Pregnancy Center is a “limited-service pregnancy center,” as defined in Ordinance 09-252, operating in Baltimore City from two locations. The Center provides free services to pregnant women, such as pregnancy testing; classes in prenatal development, post-pregnancy parenting, and life skills; Bible studies; and material support for women through its “Hannah’s Cupboard” program, including diapers, formula, baby and maternity clothes, toys, and books. It also provides women with information on “abstinence and natural family planning, which are recognized forms of birth control,” but does not provide referrals for abortions or other methods of birth control, asserting that it does not do so “[biased on moral and religious beliefs.” The Pregnancy Center does not charge its clients for its services.
The complaint alleges that Ordinance 09-252 specifically targets pro-life pregnancy centers such as the Pregnancy Center and thus “regulates communications at the Pregnancy Center that are personal, moral, religious, and political.” It also states that “[b]y requiring a disclaimer that the Center does not provide or refer for abortions, the Ordinance compels Plaintiffs to deliver the implied message that these services are available elsewhere and should be considered,” thus appearing to legitimize such services, in violation of the plaintiffs’ beliefs. The complaint objects to the ordinance’s requirement that the Pregnancy Center “post a sign saying that it does not provide birth-control services,” when in fact it does “in the form of education about abstinence and natural family planning.” The plaintiffs seek a declaratory judgment that the ordinance is unconstitutional on its face and/or as applied to them and an injunction prohibiting the ordinance’s enforcement. Some two months after they filed their complaint, but before the City filed its answer, the plaintiffs also filed a motion for partial summary judgment on their free speech and equal protection claims.
The City argued that the plaintiffs’ summary judgment request was premature in that the City had not been afforded the opportunity to conduct discovery or to fully develop expert testimony on key factual issues. The City contended that it needed “to conduct discovery concerning the advertising that the Pregnancy Center and other limited-service pregnancy centers employ ... [to] demonstrate its deceptive character.” The City also asked for discovery “to develop factual support for [the City’s] argument that the services offered by [the Center] are a form of commerce, and, therefore, the disclaimer required by the Ordinance is commercial speech, subject only to rational basis scrutiny' — not strict scrutiny.” Finally, the City asked for “the opportunity to develop expert testimony to provide factual support for the propositions that deceptive advertising by limited-service pregnancy centers threatens public health in a variety of ways.”
Following a hearing on the motion for summary judgment, as well as on other motions, the district court entered an order dated January 28, 2011, denying the City’s request for further discovery on the ground that it was not necessary to the issue being decided; granting the Pregnancy Center’s motion for summary judgment on its free speech claim; and enter *302 ing a judgment permanently enjoining the enforcement of the ordinance. In granting summary judgment to the Pregnancy Center, the court held that Ordinance 09-252 was unconstitutional based on its legal conclusions that the ordinance compelled speech; that it was content-based and therefore subject to strict scrutiny; and that it was not narrowly tailored to fit the City’s stated interest in enacting the ordinance. O’Brien, 768 F.Supp.2d at 812-14, 816-17.
II
This is not a hard case, and the First Amendment analysis is straightforward.
For a facial challenge, we look to the face of the ordinance and are “careful not to go beyond [its] facial requirements and speculate about ‘hypothetical’ or ‘imaginary’ cases.” Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449-50, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). But the assessment may consider the application of the regulation to others, not just to the plaintiffs, to determine whether there are conceivable instances of overbreadth. See Bd. of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 483-84, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Thus, when conducting a facial review under the First Amendment, we “construe the statute and determine whether ‘a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.’ ” Preston v. Leake, 660 F.3d 726, 739 (4th Cir.2011) (quoting United States v. Stevens, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010)).
Ordinance 09-252 targets “limited-service pregnancy centers,” which are defined as “any person ”
(1) whose primary purpose is to provide pregnancy-related services; and
(2) who:
(i) for a fee or as a free service, provides information about pregnancy-related services; but
(ii) does not provide or refer for:
(A) abortions; or
(B) nondirective and comprehensive birth-control services.
Baltimore City Health Code § 3-501 (emphasis added). Under the ordinance, “[a] limited-service pregnancy center must provide its clients and potential clients with a disclaimer substantially to the effect that the center does not provide or make referral for abortion or birth-control services.” Id. § 3-502(a). This disclaimer must be made through one or more “easily readable” signs that are “conspicuously posted in the center’s waiting room” and written in English and Spanish. Id. § 3-502(b). The failure to comply with the terms of the ordinance is punishable by a citation carrying a maximum civil penalty of $150. Id. § 3-506(a).
On its face, Ordinance 09-252 compels speech. A pregnancy center that does not provide or refer for abortions must post the sign containing the mandated language. A pregnancy center is thus required to participate in the City’s effort to tell pregnant women that abortions are available elsewhere as a presumably acceptable alternative, regardless of the moral and religious beliefs of the center.
As a matter of logic and Supreme Court precedent, “[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech.” Riley, 487 U.S. at 795, 108 S.Ct. 2667. Accordingly, compelled speech must be addressed as “a content-based regulation of speech.” Id. (citing Miami Herald Publ’g Co. v. Tornillo, 418 U.S. 241, 256, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974)). Of course, a content-based speech regulation is subject to the “most exacting scrutiny,” *303 the strict scrutiny standard. Turner Broadcasting, 512 U.S. at 642, 114 S.Ct. 2445; Riley, 487 U.S. at 796, 108 S.Ct. 2667; see also United States v. Playboy Entm’t Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Indeed, strict scrutiny applies even in cases where the compelled disclosure is limited to factually accurate or non-ideological statements. Riley, 487 U.S. at 797-98, 108 S.Ct. 2667; Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (“[The] general rule that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact”).
In an effort to avoid strict scrutiny of Ordinance 09-252, the City contends that the ordinance compels only commercial speech and therefore is subject to a lower level of scrutiny. Commercial speech is defined as “expression related solely to the economic interests of the speaker and its audience.” Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The hallmark of commercial speech is that it “does no more than propose a commercial transaction.” Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (internal citation and quotation marks omitted). In some circumstances, speech may be classified as commercial even when it “cannot be characterized merely as proposals to engage in commercial transactions.” Id.; see also id. at 67-68, 103 S.Ct. 2875 (holding that advertisements discussing the health benefits of contraceptives were commercial speech); Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 370 (4th Cir.2012) (holding that business’ outdoor mural was commercial speech where business conceded that the mural was advertising, the mural included part of the business’ logo, and the business “had an economic motivation for displaying the painting”). But speech does not “retain[ ] its commercial character when it is inextricably intertwined with otherwise fully protected speech.” Riley, 487 U.S. at 796, 108 S.Ct. 2667.
Here, the enacted text forecloses the City’s argument that the ordinance targets only commercial speech because the ordinance imposes a disclosure requirement on all speakers, regardless of economic motivation. The ordinance applies wholesale to any person who “for a fee or as a free service ” provides information about pregnancy. The ordinance thus imposes its disclosure requirement wholly indifferent to whether the speaker “propos[es] a commercial transaction.” Central Hudson, 447 U.S. at 562, 100 S.Ct. 2343; see also Centro Tepeyac v. Montgomery Cnty., 779 F.Supp.2d 456, 463-65 (D.Md.2011) (noting that similar provisions applying to persons who provide services for free “cannot rely on commercial speech cases”), affirmed, Centro Tepeyac, 722 F.3d at 189-90, No. 11-1314(L).
In a similar effort to avoid the application of strict scrutiny, the majority maintains that the commercial speech inquiry is “fact-driven” and that therefore “discovery is needed to substantiate ... whether the Center possesses economic interests apart from its ideological motivations.” Ante, at 285-86. But this approach is flawed. The Pregnancy Center’s motivation for its provision of free information is irrelevant to the inquiry of whether the ordinance, on its face, compels noncommercial speech. The ordinance reaches beyond this one pregnancy center and imposes the requirement of a disclaimer sign on every speaker — commercial or not — -who provides information “for a fee or as a free service.” The plain language of the ordinance focuses not on the economic motive of the per *304 son, but on the content of the person’s speech. It is therefore untenable for the majority to assert that the commercial motive of this pregnancy center is a relevant fact yet to be determined.
Thus, as a noncommercial, content-based regulation, the ordinance is subject to strict scrutiny, see Centro Tepeyac, 779 F.Supp.2d at 468 (holding, with respect to a similar provision, that “strict scrutiny applies”), affirmed, Centro Tepeyac, 722 F.3d at 189, No. 11-1314(L), and “[c]on-tent-based [speech] regulations are presumptively invalid,” R.A.V., 505 U.S. at 382, 112 S.Ct. 2538. The City bears the burden of rebutting the presumption of invalidity. See Playboy Entm’t Group, 529 U.S. at 816-17, 120 S.Ct. 1878. Indeed, “[i]t is rare that a regulation restricting speech because of its content will ever be permissible.” Id. at 818, 120 S.Ct. 1878. The City can, nonetheless, rebut the presumption if it is able to show that the ordinance is “narrowly tailored to promote a compelling Government interest.” Id. at 813, 120 S.Ct. 1878. And to do this, it must show that the ordinance is the least restrictive alternative to serve the government’s purpose. Id.; Ashcroft v. ACLU, 542 U.S. 656, 666, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).
The City maintains that it has a compelling government interest in assuring, as a health concern, that pregnancy centers do not misrepresent information about abortion, a concern that it grounds in the Wax-man Report and the report of the NARAL Pro-Choice Maryland Fund. It also contends that the ordinance narrowly addresses this concern by requiring pregnancy centers to post the mandated sign in their waiting rooms.
The district court accepted the City’s stated interest in the ordinance as a compelling one and elected to assess the question of whether the ordinance was narrowly tailored to serve that interest. I too would bypass any inquiry about the sufficiency of the City’s stated government interest and address the question of whether it is narrowly tailored. If the ordinance is not narrowly tailored to serve the City’s stated interest, then it must be invalidated as unconstitutional.
The inquiry into whether Ordinance 09-252 is narrowly tailored is a purely legal question: “Whether [a] regulation meets the ‘narrowly tailored’ requirement is of course a question of law....” United States v. Doe, 968 F.2d 86, 88 (D.C.Cir.1992); see also Vill. of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (whether an ordinance is overbroad is “a question of law that involved no dispute about the characteristics of’ the plaintiff). A statute is narrowly tailored only “if it targets and eliminates no more than the exact source of the ‘evil’ it seeks to remedy.” Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). “Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.” NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (citations omitted).
A regulation is not narrowly tailored when, among other things, (1) it does not advance the purported compelling interest, e.g., Meyer v. Grant, 486 U.S. 414, 426, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988); (2) it is overinclusive, e.g., Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd., 502 U.S. 105, 121-23, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); or (3) the government has other, less speech-restrictive alternatives available, e.g., Playboy Entm’t Group, 529 U.S. at 816-17, 120 S.Ct. 1878. Ordinance 09-252 fails under all three tests.
*305 First, the ordinance does not target the stated government interest of eliminating false advertising. It does not even mention false advertising, and its substance does not address it.
Second, the ordinance is overinclusive because it applies equally to pregnancy centers regardless of whether they advertise and, if they advertise, regardless of whether they engage in false advertising. See FEC v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (stating that for a law to be narrowly tailored “government must curtail speech only to the degree necessary to meet the particular problem at hand” and “must avoid infringing on speech that does not pose the danger that has prompted regulation”).
Third, several alternatives to address the problems purportedly targeted by the ordinance are available and would impose a lesser burden on speech. Most obviously, the City could speak with its own voice. It might, for example, use its own resources to undertake public education campaigns addressing the alleged dangers of pregnancy centers or, more generally, promoting consultations with physicians for pregnant women. Cf. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (“It is perfectly obvious that alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State’s goal of promoting temperance .... [Educational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective”). This is the same alternative that the district court found available in Centro Tepeyac, 779 F.Supp.2d at 469 n. 9, to support in part its finding that a similar provision was likely unconstitutional and that this court affirmed in Centro Tepeyac, 722 F.3d at 190, No. 11-1314(L).
As another alternative, the City could produce a document or website listing local pregnancy centers and noting what services are available at each. See Riley, 487 U.S. at 800, 108 S.Ct. 2667 (“[T]he State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file. This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech”).
And as yet another alternative, the City could always pursue the option of prosecuting violations of its criminal and civil laws that proscribe false or deceptive advertising. See Riley, 487 U.S. at 800, 108 S.Ct. 2667; see also Nefedro v. Montgomery Cnty., 414 Md. 585, 996 A.2d 850, 863 (2010) (holding that fraud laws were a less restrictive alternative to a law prohibiting remuneration for fortune-telling).
That the City resorted to speech restrictions before trying these or other less restrictive alternatives is more than enough to render the ordinance unconstitutional. See Thompson v. Western States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (“If the First Amendment means anything, it means that regulating speech must be a last — not first — resort”).
The additional discovery ordered by the majority would not eliminate or even mitigate these narrow-tailoring problems. The ordinance’s infirmity in this regard is apparent on its face. Cf. Sable Commc’ns of Cal., Inc. v. FCC, 492 U.S. 115, 129, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (affirming district court’s grant of preliminary injunction where the pre-enactment record contained “no legislative findings that would justify us in concluding that there is no constitutionally acceptable less restrictive means, short of a total ban, to achieve *306 the Government’s interest”); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1274 (11th Cir.2005) (invalidating content-based sign regulation on appeal from the denial of a preliminary injunction because “[t]he First Amendment questions ... [were] purely legal” and “only minimally intertwined with the facts”).
Tellingly, the majority does not dispute the fact that discovery would not be needed to determine whether the language of the ordinance advances the stated government interest or is overinclusive — -two of the three ways that can render an ordinance not narrowly tailored. ' But it nonetheless states that the City “must be accorded the opportunity to develop evidence disproving the effectiveness of purported less restrictive alternatives to the Ordinance’s disclaimer.” Ante, at 288; cf. Centro Tepeyac, 722 F.3d at 190, No. 11-1314(L) (holding to the contrary with respect to a similar provision). It is remarkable that this is discovery that the City never requested.
Finally, the majority adds the careless declaration that:
[T]he City must be accorded the opportunity to develop evidence relevant to the compelling governmental interest and narrow tailoring issues, including, inter alia, evidence substantiating the efficacy of the Ordinance in promoting public health.
Ante, at 288. This declaration of loosely mixed principles is, as it stands, irrelevant to any issue, but it appears mostly to collapse two burdens that the government has under strict scrutiny. First, the government was required to advance a compelling governmental interest in mandating speech. With respect to that, the majority fails to recognize that the district court assumed that the government had appropriately claimed a compelling interest in prohibiting the misrepresentation of information about abortion. Thus, there is no issue of fact to resolve. Second, the government had the burden to show that its regulation of speech — i.e., mandating the posting of a sign with specific content in pregnancy centers’ waiting rooms — was narrowly tailored to serve the compelling governmental interest. As to this, the majority fails to recognize that that issue was a question of law. See Village of Schaumburg, 444 U.S. at 634, 100 S.Ct. 826; Doe, 968 F.2d at 88. To resolve such a question of law, all that need be done is an analysis of the statute’s language to determine if it “targets and eliminates no more than the exact source of the ‘evil’ it seeks to remedy.” Frisby, 487 U.S. at 485, 108 S.Ct. 2495.
In short, to respond to the self-evident proposition that discovery is not needed in resolving questions of law, the majority fabricates fact issues where none exist and then criticizes the dissenting opinions, stating, “The dissenters would wholly exempt the Center from fundamental procedures to which all civil litigants are both subject and entitled.” Ante, at 290. Indeed, it inflates the postured balloon, suggesting even a constitutional issue in denying discovery. See ante, at 290 (“We, however, are not so dismissive of the Federal Rules of Civil Procedure, which, as the Supreme Court has underscored, ‘are designed to further the due process of law that the Constitutional guarantees’ ”). The majority’s drama about its role in protecting the Federal Rules of Civil Procedure and the U.S. Constitution does not, however, advance its argument that it can ignore the reality that the district court ruled on questions of law, questions that do not need discovery to resolve.
Ill
At bottom, we have a City ordinance that targets, on its face and by design, all *307 pregnancy centers that do not provide abortions or do not refer clients for abortions. Purportedly to remedy misrepresentations being made by these pregnancy centers about abortion, the ordinance requires each center to put a sign in its waiting room announcing to clients that the abortion alternative is not provided at the center, even though such center might hold the view that abortion should not be considered as an alternative at all. Such an approach invades the most fundamental freedom of speech, mandating that the pregnancy centers speak a message with which they profoundly disagree. Even though the City may have a compelling interest in preventing misrepresentations about abortion, it is not free to impose a requirement of speech on those who do not misrepresent. Ordinance 09-252 mandates the antidote on all persons who refuse to provide or refer for abortion, regardless of whether they have misrepresented or are misrepresenting abortion information. On its face, the ordinance is overbroad and unconstitutional. See Cen-tro Tepeyac, 779 F.Supp.2d at 468-69 (holding similar provision likely not narrowly tailored), affirmed, Centro Tepeyac, 722 F.3d at 190, No. 11-1314(L).
The majority, however, refuses to consider the legal questions raised by the Pregnancy Center’s facial challenge and reaches, in its far-ranging opinion, irrelevant and ideological facts about a case not presented to conclude that summary judgment was inappropriate. I disagree and conclude that the district court properly recognized the issues that could be decided as a matter of law and found the ordinance unconstitutional. That legal analysis is not a difficult one and, I submit, readily leads
to the district court’s conclusion. Accordingly, I would affirm.*
Judges WILKINSON, SHEDD, and AGEE have asked me to show them as joining this opinion.

 While I dissent from the court’s remand, I concur in its judgment that the Archbishop and St. Brigid's Catholic Church lack standing to challenge the ordinance.