*186 Affirmed by published opinion. Judge KING wrote the majority opinion, in which Chief Judge TRAXLER and Judges WILKINSON, MOTZ, GREGORY, DUNCAN, DAVIS, KEENAN, WYNN, FLOYD, and THACKER joined. Judge WILKINSON wrote a concurring opinion. Judge NIEMEYER wrote a dissenting opinion, in which Judges SHEDD and AGEE joined.
KING, Circuit Judge:
These cross-appeals demand our review of the district court’s decision to preliminarily enjoin enforcement of one portion of a Montgomery County Resolution requiring limited service pregnancy resource centers to post signs disclosing (1) that “the Center does not have a licensed medical professional on staff,” and (2) that “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” See Centro Tepeyac v. Montgomery Cnty., 779 F.Supp.2d 456, 469-72 (D.Md.2011).- The injunction encompasses the second statement compelled by the Resolution, but not the first one — leaving no party to this dispute fully satisfied. Because the district court acted well within its discretion, however, we affirm its decision.[1]
I.
A.
On February 2, 2010, the Montgomery County Council, acting as the Montgomery County Board of Health, adopted the Resolution at issue, No. 16-1252. See J.A. 198-200.[2] The Resolution applies to limited service pregnancy resource centers, defined therein as
an organization, center, or individual that:
(A) has a primary purpose to provide pregnancy-related services;
(B) does not have a licensed medical professional on staff; and
(C) provides information about pregnancy-related services, for a fee or as a free service.
Id. at 199. The Resolution requires each such center to “post at least 1 sign in the Center” making the specified disclosures, 1.e., that “the Center does not have a licensed medical professional on staff,” and that “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” Id. The sign must be “written in English and Spanish,” “easily readable,” and “conspicuously posted in the Center’s waiting room or other area where individuals await service.” Id.
The Resolution relays the County Council’s finding, following a December 1, 2009 public hearing, “that requiring a disclaimer for certain pregnancy resource centers is necessary to protect the health of County residents.” J.A. 198. Explaining that finding, the Resolution identifies the Council’s “concern [as being] that clients may be' misled into believing that a Center is providing medical services when it is not,” and that “[clients could therefore neglect to take action (such as consulting a doctor) *187 that would protect their health or prevent adverse consequences, including disease, to the client or the pregnancy.” Id.
The Montgomery County Department of Health and Human Services is charged with “investigat[ing] each complaint alleging a violation of [the Resolution] and tak[ing] appropriate action, including issuing a civil citation when compliance cannot be obtained otherwise.” J.A. 200. Prior to a citation, however, the Department must “issue a written notice ordering the Center to correct the violation within either” “10 days of the notice” or “a longer period that the Department specifies in the notice.” Id. Where there are “repeated violations” of the Resolution, “[t]he County Attorney may file an action in a court with jurisdiction to enjoin [those] violations.” Id.
B.
On May 19, 2010, Centro Tepeyac initiated this 42 U.S.C. § 1983 action in the District of Maryland, claiming that the Resolution is unconstitutional as applied and on its face, under both the First and Fourteenth Amendments. The Complaint identifies Centro Tepeyac as a not-for-profit corporation operating a limited service pregnancy resource center located in the Silver Spring area of Montgomery County. See Complaint ¶¶ 11, 45-47. According to the Complaint, Centro Tepeyac “does not charge women for its services,” which include “pregnancy testing, referral services, and confidential discussion of pregnancy options,” plus “information on parenting,” “post-abortion guidance,” and “practical support in the form of diapers, baby clothes and other needed items.” Id. ¶¶ 12-13. The Complaint asserts that Centro Tepeyac “does not refer or provide for abortion” or birth-control services other than “abstinence and natural family planning.” Id. ¶ 14. The Complaint also alleges, inter alia, that the Resolution is discriminatorily “aimed at pro-life pregnancy resource centers” such as Centro Tepeyac, and that the Resolution forces Centro Tepeyac “to suggest that [it is] not qualified to discuss pregnancy options or to provide help to pregnant women.” Id. ¶¶ 30, 50. Attached as exhibits to the Complaint are a declaration of Centro Tepeyac’s Executive Director corroborating several of the Complaint’s factual allegations; an unofficial version of the Resolution; a press release issued by the Montgomery County Council announcing its adoption of the Resolution; and miscellaneous documents, including portions of the Resolution’s legislative record.
The Complaint seeks preliminary and permanent injunctions barring enforcement of the Resolution, as well as monetary damages and litigation costs. With the Complaint, Centro Tepeyac filed a memorandum in support of its request for a preliminary injunction. In response, on June 3, 2010, the four defendants — including Montgomery County and the County Council (together, the “County”) — submitted an opposition to the preliminary injunction request, combined with a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The sole exhibit to the County’s submission was a copy of the Resolution as adopted. Thereafter, on June 10, 2010, Centro Tepeyac filed a freestanding motion for a preliminary injunction. The district court conducted a motions hearing on July 23, 2010, and issued its preliminary injunction decision on March 15, 2011.
In these interlocutory cross-appeals, the County contests the district court’s decision to the extent that it enjoins enforcement of the Resolution’s compelled pronouncement that “the Montgomery County *188 Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” See Centro Tepeyac, 779 F.Supp.2d at 471-72. Meanwhile, Centro Tepeyae challenges the decision insofar as it leaves in place the Resolution’s requirement for limited service pregnancy resource centers to disclose that “the Center does not have a licensed medical professional on staff.” See id. We possess jurisdiction over these appeals pursuant to 28 U.S.C. § 1292(a)(1) (providing, in pertinent part, that “the courts of appeals shall have jurisdiction of appeals from ... [ijnterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions”).[3]
II.
A.
We review for abuse of discretion the district court’s preliminary injunction decision. See Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir.2011). As we have expounded,
[t]he decision to issue or deny a preliminary injunction is committed to the sound discretion of the trial court. That decision will not be disturbed on appeal unless the record shows an abuse of that discretion, regardless of whether the appellate court would, in the first instance, have decided the matter differently.
Quince Orchard Valley Citizens Ass’n v. Hodel, 872 F.2d 75, 78 (4th Cir.1989). In conducting our assessment, “we review the district court’s factual findings for clear error and review its legal conclusions de novo.” Pashby v. Delia, 709 F.3d 307, 319 (4th Cir.2013). We may find an abuse of discretion if the court “applied] an incorrect preliminary injunction standard,” “rest[ed] its decision on a clearly erroneous finding of a material fact,” or “misapprehended] the law with respect to underlying issues in litigation.” Quince Orchard Valley, 872 F.2d at 78 (internal quotation marks omitted). Simply put, however, the court committed no such error here.
First of all, the district court recognized the principle that “[a] preliminary injunction is an extraordinary remedy.” Centro Tepeyac, 779 F.Supp.2d at 469 (internal quotation marks omitted); see Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir.1991) (“Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.” (alteration and internal quotation marks omitted)). The court also appropriately employed the preliminary injunction standard recently spelled out by the Supreme Court in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Under the Winter standard, the movant “must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.” 555 U.S. at 20, 129 S.Ct. 365.
*189 Assessing the merits of Centro Tepeyae’s claims, pertinent to the first Winter factor, the district court focused on the First Amendment theory “that the Resolution requires [Centro Tepeyac] to say something it might not otherwise say” and thus constitutes a content-based regulation of speech. See Centro Tepeyac, 779 F.Supp.2d at 462 & n. 5 (citing Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (“Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech.”)). The court observed that content-based speech regulations ordinarily are subject to strict scrutiny, but that lesser degrees of scrutiny may apply where the speech at issue is, inter alia, commercial or professional. See id. at 462-68; see also, e.g., Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (explaining that “[l]aws that compel speakers to utter or distribute speech bearing a particular message are [generally] subject to the [most exacting scrutiny]”); Zauderer v. Office of Disciplinary Counsel of the Supreme Court, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (recognizing that disclosure requirements aimed at misleading commercial speech need only survive rational basis scrutiny, by being “reasonably related to the State’s interest in preventing deception of customers”); Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (concluding that restrictions on nonmisleading commercial speech concerning lawful activity must withstand intermediate scrutiny, by “directly advanc[ing]” a “substantial” governmental interest and being “no[ ] more extensive than is necessary to serve that interest”); Moore-King v. Cnty. of Chesterfield, Va., 708 F.3d 560, 569 (4th Cir.2013) (“Under the professional speech doctrine, the government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment.”).
Because it could not determine otherwise on the undeveloped record before it, the district court was constrained to accept that the speech regulated by the Resolution is neither commercial nor professional. In that regard, the court observed that the County had not yet “taken any definite position as to whether the Resolution regulates commercial speech,” and that there currently was “no indication that [Centro Tepeyac] is acting out of economic interest.” Centro Tepeyac, 779 F.Supp.2d at 463. The court also noted that, “[e]ven if some aspects of [Centro Tepeyac’s] speech were categorized as commercial, the facts alleged suggest that such commercial speech would at least be ‘intertwined with [fully protected] speech,’ ” in any event triggering strict scrutiny. Id. at 464 n. 7 (quoting Riley, 487 U.S. at 796, 108 S.Ct. 2667). Further, the court deemed it impossible to rule “at this stage that the Resolution is merely a regulation of a profession with incidental effects on speech.” Id. at 467.
Thus applying strict scrutiny, the district court proceeded to analyze whether “the Resolution is ‘1) narrowly tailored to 2) promote a compelling government interest.’ ” Centro Tepeyac, 779 F.Supp.2d at 468 (quoting PSINet, Inc. v. Chapman, 362 F.3d 227, 233 (4th Cir.2004)). Starting with the compelling interest question, the court determined that “[i]t may be that the government has a compelling interest in ensuring that its citizenry are able to obtain needed medical care,” and that “[t]he interest in ensuring patients obtain appropriate medical care might fall within the ambit of the state’s broader interest in preserving public health.” Id. (citing, inter alia, Varandani v. Bowen, 824 F.2d *190 307, 311 (4th Cir.1987) (recognizing, in the due process context, “the government’s compelling interest in assuring safe health care for the public”)).
Nevertheless, the district court also concluded, with regard to narrow tailoring, that the County had “not shown, based on the facts alleged in the complaint, that the second portion of the disclaimer required by the Resolution, which ‘encourages women who are or may be pregnant to consult with a licensed health care provider,’ ” is narrowly tailored to promote the County’s compelling interest. Centro Tepeyac, 779 F.Supp.2d at 468 (citing United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (“If . a less restrictive alternative would serve the Government’s purpose, the legislature must use that alternative.”)). The court was particularly concerned that, in light of the first compelled statement (that “the Center does not have a licensed medical professional on staff’), the second statement may constitute “unneeded speech,” because the County’s interest in ensuring that women will not forgo medical treatment “might be satisfied once women were aware that [a pregnancy resource center does] not staff a medical professional.” Id. Additionally, the court noted that “several options less restrictive than compelled speech could be used to encourage pregnant women to see a licensed medical professional,” citing as examples that the County “could post notices [in its own facilities] encouraging women to see a doctor” or “launch a public awareness campaign.” Id. at 469 n. 9.
On the other hand, the district court ruled that “the record is at least colorable at this stage to suggest that [the first portion of the Resolution-mandated disclaimer] is narrowly tailored to meet the [County’s stated] interest.” Centro Tepeyac, 779 F.Supp.2d at 471. The court explained that the first compelled statement merely notifies patients “that a licensed medical professional is not on staff,” “does not require any other specific message,” and “in neutral language states the truth.” Id. Moreover, the court indicated that the existing evidence was altogether inadequate to demonstrate that less restrictive alternatives proposed by Centro Tepeyac “would be at least as effective in achieving the legitimate purpose that the [Resolution] was enacted to serve.” See Reno v. ACLU, 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).
Consequently, the district court determined that Centro Tepeyac had failed to satisfy its burden of showing, as to the initial factor of the Winter preliminary injunction standard, that the Resolution’s first compelled statement “will fail to survive strict scrutiny review.” Centro Tepeyac, 779 F.Supp.2d at 471; cf. Beal v. Stern, 184 F.3d 117, 130 (2d Cir.1999) (“We are not prepared to find on this record that appellants have shown a clear likelihood of success on the merits of either [First Amendment] claim. As to narrow tailoring, we simply do not have sufficient evidence to determine whether means chosen by the [government] are substantially broader than necessary.”). But because Centro Tepeyac had demonstrated likely success on the merits of its First Amendment claim with respect to the second compelled statement, the court continued its Winter analysis with respect to that portion of the Resolution.
Addressing the second Winter factor (the likelihood of irreparable harm), the district court acknowledged that, “‘in the context of an alleged violation of First Amendment rights, a plaintiffs claimed irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiffs First Amendment claim.’ ” Centro Tepeyac, 779 F.Supp.2d at 471 (quoting *191 WV Ass’n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 558 F.3d 292, 298 (4th Cir.2009)); see Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 261 (4th Cir.2003) (“[T]he Supreme Court has explained that loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.’” (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976))). Recognizing that there was “no reason to depart from the ordinary rule in this case,” the district court ruled that Centro Tepeyac had “shown irreparable harm.” Centro Tepeyac, 779 F.Supp.2d at 471.
The district court jointly considered the third and fourth Winter factors (the balance of equities and the public interest), invoking precedent deeming those “factors established when there is a likely First Amendment violation.” See Centro Tepeyac, 779 F.Supp.2d at 471-72. That precedent counsels that “a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.” Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir.2002) (internal quotation marks omitted). It also teaches that “upholding constitutional rights surely serves the public interest.” Id.
Having concluded that Centro Tepeyac satisfied each of the four Winter factors with respect to the second compelled statement, the district court enjoined enforcement of that portion of the Resolution only. The court specified that the County “will be enjoined from enforcing the Resolution’s requirement that [limited service pregnancy resource centers] post a sign indicating that ‘the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.’ ” Centro Tepeyac, 779 F.Supp.2d at 472. That is, consistent with its determination that the second compelled statement likely is not narrowly tailored because it constitutes “unneeded speech,” the court prohibited the County from requiring any center (and not merely Centro Tepeyac) to make such disclosure. See United States v. Stevens, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (instructing that facial invalidation is appropriate where “no set of circumstances exists under which [the law] would be valid, or [where the law] lacks any plainly legitimate sweep,” and, alternatively, where “a substantial number of [the law’s] applications are unconstitutional, judged in relation to the [law’s] plainly legitimate sweep” (citations and internal quotation marks omitted)).[4]
*192 In these circumstances, we cannot say that the district court in any way abused its discretion. The court applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute. Indeed, we commend the court for its careful and restrained analysis.
B.
Our good dissenting colleagues — who condemn the district court’s decision not to enjoin the first compelled statement— clearly “would, in the first instance, have decided the matter differently”; that is no justification, however, for reversal. See Quince Orchard Valley, 872 F.2d at 78. As the Supreme Court has instructed, where a preliminary injunction is under an interlocutory examination, determining whether the district court abused its discretion “is the extent of our appellate inquiry.” See Doran v. Salem Inn, Inc., 422 U.S. 922, 934, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The dissenters simply fail to grasp that controlling principle when they suggest that our affirmance herein is incompatible with today’s separate opinion in another Maryland pregnancy center-compelled disclosure case — a case that, unlike this one, came before us only after the district court entered a permanent injunction on the basis of a summary judgment award. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., No. 11-1111(L), 721 F.3d 264, at 291-92, 2013 WL 3336884 (4th Cir. July 3, 2013) (en banc) (explaining that, because “the district court improperly denied the City essential discovery and otherwise flouted the Federal Rules of Civil Procedure ..., we vacate the judgment and remand for further proceedings”).
Meanwhile, the dissenters search in vain for a legal error to call an abuse of discretion. First, invoking the Supreme Court’s decision in Riley, the dissenters assert that the district court erred “by dividing its assessment of the Resolution and approving one sentence but not the other.” Post at 195 (Niemeyer, J., dissenting). Riley, however, is irrelevant to the question of whether a court may evaluate separately the constitutionality of two parts of a disclosure requirement. See Riley, 487 U.S. at 796, 108 S.Ct. 2667 (addressing different issue of “what level of scrutiny to apply” where compelled speech is commercial but “inextricably intertwined with otherwise fully protected speech”). Furthermore, upon careful consideration, the district court soundly determined “that there is nothing in the Resolution to dispel [Maryland’s] ordinary presumption of severability.” Centro Tepeyac, 779 F.Supp.2d at 470 (citing Montrose Christian Sch. Corp. v. Walsh, 363 Md. 565, 770 A.2d 111, 129 (2001), for the proposition that, “[u]nder Maryland law, there is a strong presumption that if a portion of an enactment is found to be invalid, the intent of the legislative body is that such portion be severed” (alterations and internal quotation marks omitted)).
The dissenters also posit that the district court’s narrow tailoring rulings on the first and second compelled statements were inconsistent, in that “the court appropriately tested the second sentence’s constitutionality against a range of less-restrictive alternatives” that “applied equally to” the first. Post at 195. In doing so, the dissenters obscure the court’s primary reason for its second-eompelled-statement rul *193 ing: that the first compelled statement appeared to render the second “unneeded speech.” Centro Tepeyac, 779 F.Supp.2d at 468.
Finally, the dissenters assert that the district court erroneously deemed the first compelled statement to be narrowly tailored solely because it is “ ‘neutral’ ” and “ ‘true.’ ” See post at 196. But the court’s actual reasoning was this:
As discussed above, the interest in public health and access to medical care may be described as compelling. And, the record is at least colorable at this stage to suggest that the disclaimer is narrowly tailored to meet the interest: only requiring those [limited service pregnancy resource centers] to post a notice that a licensed medical professional is not on staff. It does not require any other specific message and in neutral language states the truth.
Centro Tepeyac, 779 F.Supp.2d at 471. The district court’s reasoning is entirely consistent with the principle, recognized by the court, see id. at 468, that “[a]ction taken to remedy an ‘evil’ will be considered ‘narrowly tailored if it targets and eliminates no more than the exact source of the evil it seeks to remedy.’ ” Columbia Union Coll. v. Clarke, 159 F.3d 151, 157 n. 2 (4th Cir.1998) (quoting Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). Accordingly, there is no merit to the dissenters’ view that the court “misapprehend[ed] the law with respect to underlying issues in litigation.” See Quince Orchard Valley, 872 F.2d at 78 (internal quotation marks omitted).
III.
Pursuant to the foregoing, we affirm the preliminary injunction decision rendered by the district court.

AFFIRMED.

. These appeals were initially heard by a three-judge panel of our Court. The panel majority affirmed the district court's preliminary injunction decision with respect to the Resolution-mandated second statement, but reversed as regards the first. See Centro Tepeyac v. Montgomery Cnty., 683 F.3d 591 (4th Cir.2012). The panel opinion was subsequently vacated, however, with the grant of rehearing en banc. See Centro Tepeyac v. Montgomery Cnty., No. 11-1314(L), 2012 WL 7855860 (4th Cir. Aug. 15, 2012).

. Citations herein to "J.A. _” refer to the contents of the Joint Appendix filed by the parties in these appeals.

. Also by its March 15, 2011 decision, the district court granted in part the defendants' Rule 12(b)(6) motion, dismissing Centro Tepeyac’s First and Fourteenth Amendment claims against the Montgomery County Department of Health and Human Services and County Attorney Marc Hansen. See Centro Tepeyac, 779 F.Supp.2d at 461. The court refused, however, to dismiss the same claims as to the remaining two defendants, whom we refer to as the “County.” See id. at 461-69. Apparently recognizing the limits of our jurisdiction over these interlocutory appeals, the parties do not challenge the disposition of the Rule 12(b)(6) motion.

. Additionally, the district court considered and rejected Centro Tepeyac’s contention that the Resolution should be preliminarily enjoined for being unconstitutionally vague. See Centro Tepeyac, 779 F.Supp.2d at 470 (recognizing that "[a] potentially vague law that interferes with First Amendment rights deserves greater scrutiny ‘because of its obvious chilling effect on free speech’ ” (quoting Reno, 521 U.S. at 872, 117 S.Ct. 2329)). The court determined that, although ‘‘[a] regulation may be deemed impermissibly vague if it 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' ” id. (quoting Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)), Centro Tepeyac's allegation of undefined phrases in the Resolution (such as "has a primary purpose” and "medical-related services”) was insufficient to establish vagueness, id. at 470-71. As the court explained, "[a] failure by a statute to define all of its terms does not necessarily render it impermissibly vague.” Id. at 471 (citing Rose v. Locke, 423 U.S. 48, 50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) (“Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.”)). The court emphasized that, "[e]ven *192 when a regulation implicates the First Amendment, 'perfect clarity and precise guidance have never been required.' " Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).