DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
With great respect for my colleagues’ contrary views and genuine regret that we cannot agree on the outcome of these important cases, I dissent.
At the center of these cases are changes made by the North Carolina General Assembly to the State’s election laws. Plaintiff-Appellants and the United States moved the district court to grant a preliminary injunction prohibiting the State of North Carolina from enforcing many of the new laws. After considering the evidence offered at a week-long hearing (including the testimony of twelve witnesses and thousands of pages of written material) and the extensive written and oral legal arguments, the district court denied the motions. The court explained its reasoning in a 125-page opinion and order. Three sets of plaintiffs appealed; the United States did not. The district court’s order is now before us, on interlocutory appeal, less than five weeks before voters in North Carolina go to the polls in a statewide general election.
Nothing in the record suggests that any dilatoriness by either the parties or the court caused this unfortunate timing. For, to give the important issues at stake here their due required extensive preparation, including months of discovery by the parties, and consideration and analysis by the district court. But the fact of the timing remains. Appellants ask this court to reverse the district court’s denial of relief, and to grant a preliminary injunction requiring the State to revert to abandoned election prpcedures for which the State maintains it has not, and is not, prepared. For the reasons that follow, I cannot agree that such extraordinary relief should issue.
I.
To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Critically, each of these four requirements must be satisfied. Id. Moreover, a plaintiff must make a “clear” showing both that he is likely to suffer irreparable harm absent relief and he is likely succeed on the merits at trial. Id.; Real Truth About Obama, Inc. v. Fed. Election Comm’n, 575 F.3d 342, 346 (4th Cir.2009), vacated on other grounds, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).
The majority emphasizes that unlawfully or unconstitutionally depriving North Carolinians of the opportunity to vote is an irreparable harm. I do not contend to the contrary. But by the same token, the requested injunction will require the State to halt the ongoing implementation of one of its duly enacted statutes — a statute that, for now at least, has not been rendered invalid. As the Chief Justice recently reminded us, this itself constitutes “a form of irreparable injury.” Maryland v. King, *250 — U.S.-, 133 S.Ct. 1, 3, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers).
Moreover, even a showing of irreparable harm does not, without more, entitle a plaintiff to a preliminary injunction. While we once permitted the mere presence of “grave or serious questions for litigation” to tip the balance in the mov-ant’s favor, Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 363 (4th Cir.1991), we have since recognized that this approach is in “fatal tension” with the Supreme Court’s instruction in Winter that all four factors must be independently satisfied. Real Truth, 575 F.3d at 346. Accordingly, no matter how likely the irreparable injury absent an injunction, a plaintiff can obtain á preliminary injunction only if he demonstrates a clear likelihood of success on the merits, and the balance of equities favors him, and the injunction is in the public interest.
Such plaintiffs comprise a small class. As the Supreme Court explained in Winter, the grant of a preliminary injunction is “an extraordinary remedy never awarded as of right.” 555 U.S. at 24, 129 S.Ct. 365; see also id. at 32, 129 S.Ct. 365 (noting that even issuance of a permanent injunction after trial “is a matter of equitable discretion; it does not follow from success on the merits as a matter of right.”). In a recent case, our en banc court similarly recognized that the grant of such a remedy involves “the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it.” Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir.2013) (en banc) (internal citation and quotation marks omitted).
Our review of a district court’s denial of such an “extraordinary remedy” is also highly deferential. We review the grant or denial of a preliminary injunction for “abuse of discretion.” Real Truth, 575 F.3d at 345-47. Under this standard, we review the district court’s factual findings for clear error. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir.2013). We review its “legal rulings de novo” but we review the district court’s “ultimate decision to issue the preliminary injunction for abuse of discretion.” Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). Thus, as the Third Circuit has explained, an appellate court “use[s] a three-part standard to review a District Court’s grant of a preliminary injunction: we review the Court’s findings of fact for clear error, its conclusions of law de novo, and the ultimate decision to grant the preliminary injunction for abuse of discretion.” Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir.2010).
While securing reversal of a denial of preliminary relief is an uphill battle for any movant, Appellants face a particularly steep challenge here. For “considerations specific to election cases,” including the risk of voter confusion, Purcell v. Gonzalez, 549 U.S. 1, 4-5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006), counsel extreme caution when considering preliminary injunctive relief that will alter electoral procedures.* *251 Because those risks increase “[a]s an election draws closer,” id. at 5, 127 S.Ct. 5, so too must a court’s caution. Cf. Riley v. Kennedy, 553 U.S. 406, 426, 128 S.Ct. 1970, 170 L.Ed.2d 837 (2008) (“[Practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges.”). Moreover, election cases like the one at hand, in which an appellate court is asked to reverse a district court’s denial of a preliminary injunction, risk creating “conflicting orders” which “can themselves result in voter confusion and consequent incentive to remain away from the polls.” Purcell, 549 U.S. at 4-5, 127 S.Ct. 5.
II.
Given the standard of review, and the Supreme Court’s teaching on injunctive relief in the weeks before an election, I cannot join the majority in reversing the judgment of the district court.
My colleagues argue that we should reverse because, in assessing the likelihood of Appellants’ success on the merits, the district court articulated certain legal standards incorrectly. Such a misstep, they assert, constitutes an abuse of discretion and so requires reversal and grant of in-junctive relief. Usually an error of law does constitute an abuse of discretion and does require reversal. But when reviewing the denial of a preliminary injunction, an appellate court can find an abuse of discretion requiring reversal only if the appellant demonstrates that the corrected standard renders its likelihood of success clear and establishes that the other requirements for a preliminary injunction have been met.
In my view, Appellants have not done this here. That is, Appellants have neither established a clear likelihood of success on the merits, nor demonstrated, particularly at this late juncture, that the balance of the equities and the public interest weigh in their favor. Absent the required showing on each of these elements, the district court’s “ultimate decision” to deny preliminary relief was not an abuse of discretion. O Centro, 546 U.S. at 428, 126 S.Ct. 1211.
III.
Giving due deference, as we must, to the district court’s findings of fact, Appellants have not established that the district court abused its discretion in finding no clear likelihood of their success on the merits. This is not to say that I believe the district court’s legal analysis was without error, only that Appellants have not shown that correcting the errors would render clear their likelihood of success.
For instance, I am troubled by the court’s failure to consider the cumulative impact of the changes in North Carolina voting law. Specifically, the district court found that prohibiting the counting of out-of-precinct provisional ballots would not burden minority voters because early voting provides “ample opportunity” for individuals “who would vote out-of-precinct” to otherwise cast their ballot. North Carolina State Conference of Branches of the NAACP v. McCrory, 997 F.Supp.2d 322, 367 (M.D.N.C.2014). That finding rests on the assumption that eliminating a week of early voting still leaves minority voters with “ample opportunity.” But the district court discussed plaintiffs’ challenges to these two provisions without acknowledging that the burden imposed by one restriction could reinforce the burden imposed by others. Compare id. at 366-68 with id. at 370-75. Similarly, the district court discussed same-day registration, id. at 46, without recognizing that eliminating, in one fell swoop, preferred methods of both registration and ballot casting has a more profound impact on the opportunity to vote than simply eliminating one or *252 the other. Cf. Pisano v. Strach, 743 F.3d 927, 933 (4th Cir.2014) (“When deciding whether a state’s filing deadline is unconstitutionally burdensome, we evaluate the combined effect of the state’s ballot-access regulations.” (emphasis added)).
At this stage, however, I cannot conclude that correcting these, or similar, errors requires the holding that Appellants are clearly likely to succeed on the merits. The district court’s factual findings about early voting and same-day registration suggest Appellants’ evidence simply did not sway the court. The court rejected as unpersuasive evidence offered that constricting the early voting period assertedly would create long lines at the polls, McCrory, 997 F.Supp.2d at 372, affect black voters disproportionately, id., or cut down on Sunday voting hours in the upcoming election. Id. at 373. So too with same-day registration: the district court rejected Appellants’ assertions that eliminating same-day registration would cause registration rates among black North Carolinians to drop. Id. at 350. Whatever the wisdom of these factual findings, they are not clearly erroneous.
In short, had I been overseeing this case in the district court, I might have reached a different conclusion about Plaintiffs’ chances of success on the merits. But neither I nor my colleagues oversaw this case and its 11,000-page record. Nor did we consider the evidence and arguments produced in five days of hearings. And though I share some of my colleagues’ concerns about the district court’s legal analysis, those concerns do not establish that plaintiffs have shown a clear likelihood of success on the merits.
IV.
Further, Appellants have not shown that the balance of equities and the public interest support issuance of the preliminary injunction they seek. Any such showing would require overcoming the burden the State faces in complying with ordered changes to its election procedures and the risk of confusing voters with dueling opinions so close to the election.
Election day is less than five weeks away, and other deadlines loom even closer. In fact, for the many North Carolina voters that have already submitted absentee ballots, this election is already underway. The majority’s grant of injunctive relief requires boards of elections in North Carolina’s 100 counties to offer same-day registration during the early voting period and count out-of-precinct provisional ballots — practices for which neither the State nor the local boards have prepared. See, e.g., Poucher Decl. 4, ECF No. 146-1 (“To have to revert back to conducting an election under the prior statute would be confusing to [election] officials, and again unfunded.”).
The majority suggests that the State exaggerates the burden imposed on it, and that resurrecting past practices is a simple matter. Perhaps. But the logistics of running an election seem to me far more complex than my colleagues suggest. Poll workers have been trained and polling centers have been equipped in reliance on the procedures that governed the most recent statewide primary. An injunction will render some of those procedures a nullity. Additionally, it is undisputed that the same-day registration system used in elections under the prior law was administered electronically through an application embedded within a comprehensive computer program. That application was disengaged after the enactment of SL 2013-381, and is now out of date. Reliable restoration of the application in time for the general election is apparently impossible. For this reason, the injunction will require the same-day registration process to be manu *253 ally administered by each county board, risking delays, errors, and general confusion. Thus, while reverting to the' old procedure may make for a simple order, it will require substantial effort to effectuate in practice.
Recognizing the importance of avoiding confusion at the polls, both we and the Supreme Court have deferred to a state’s own assessment of when such confusion is likely to occur. See, e.g., U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 834, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995); Munro v. Socialist Workers Party, 479 U.S. 189,
In addition to the burden it places on the State, an about-face at this juncture runs the very real risk of confusing voters who will receive incorrect and conflicting information about when and how they can register and cast their ballots. Under North Carolina law, ensuring voters have the correct information in a timely fashion is not just good policy, it is a statutory mandate. See N.C. Gen.Stat. § 163-278.69(a). The State is required to send to every household a Judicial Voter Guide “no more than 28 days nor fewer than seven days before” early voting begins. Id. We were told at oral argument that this Guide, and a timeline of important dates, have already been printed and sent to every household in the State, and have been made available on the State Board of Elections’ website. See 2014 General Election Judicial Voter Guide, http://www.ncsbe.gov/ncsbe/Portals/O/FilesT/JudicialVoter Guide2014.pdf (last visited Sept. 30, 2014). The majority’s order renders this information inaccurate. For instance, the current Guide lists a registration cut-off date of October 10 and instructs voters that they must vote in their proper precinct. Id. Moreover, the widespread dissemination of flat-out contradictory information undermines confidence in the State’s ability to carry out orderly elections. 195-96, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986); Pisano, 743 F.3d at 937. The majority downplays the State’s concerns about confusion here, suggesting that the effect of any confusion will be minimal. My colleagues see the injunction as a “safety net” that will ensure that any confused voters at least have the opportunity to cast a ballot. But this assumes that those who may be confused by “conflicting orders” will resist the “consequent incentive to remain away from the polls.” Purcell, 549 U.S. at 5, 127 S.Ct. 5. For “conflicting orders” cause not only uncertainty about the status of particular voting procedures, but also general frustration with and distrust of an election process changed on the eve of the election itself.
In sum, to obtain a preliminary injunction, Appellants must establish that the balance of hardships and public interest weigh in their favor. I cannot conclude that they have done so here.
V.
Appellants will have the opportunity at trial to demonstrate precisely how SL 2013-381 burdens voters in North Carolina. And if Appellants can show that the multiple provisions of that law work in tandem to limit voting opportunities, I am confident that the district court will consider the totality of that burden. A law that adopts a “death by a thousand cuts” approach to voting rights is no more valid than a law that constricts one aspect of the voting process in a particularly onerous manner. But at this juncture, in my view, Plaintiffs have not met the high ban necessary to obtain the relief they seek. Accordingly, I respectfully dissent.

 Although the majority steadfastly asserts that the requested injunction seeks only to maintain the status quo, the provisions challenged by Appellants were enacted more than a year ago and governed the statewide primary elections held on May 6, 2014. Appellants did not move for a preliminary injunction until May 19, 2014, almost two weeks after the new electoral procedures had been implemented in the primary. Moreover, regardless of how one conceives of the status quo, there is simply no way to characterize the relief requested by Appellants as anything but extraordinary. Appellants ask a federal court to order state election officials to abandon their electoral laws without first resolving the question of the legality of those laws.