**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-2108

USA FARM LABOR, INC.; JCP FARMS, LLC; LAZY BS BAR, INC.; B&B AGRI SALES, LLC; HOGGARD FARMS; MASCHING AGRICULTURE, LLC; HUTTO GRAIN; KD FARM & RANCH; CIRCLE D FARMS; TRIPLE T FARMS, INC.; BEBB FARMS; JAMERSON FARMS; BRUCE YOUNG FARMS; SK FARMS INC.; KAUP PRODUCE, INC.; COTEAU TILING, INC.; HAALAND GRAIN FARMS; LINCOLN COUNTY FEED YARD LLC; CDC, INC.; GRAND FARMING ENTERPRISES, INC.; FOUR R'S RANCH LLC; J D LAYMAN FARMS, INC.; MOLITOR BROTHERS FARM; WRIGHT FARMS OF BUTLER CO INC.

   Plaintiffs - Appellants,

  v.

VINCE MICONE, Acting Secretary of Labor, U.S. Department of Labor; BRENT PARTON, Acting Assistant Secretary of Labor Employment and Training Administration, U.S. Department of Labor; BRIAN PASTERNAK, Administrator, Office of Foreign Labor Certification, U.S. Department of Labor

   Defendants - Appellees.

------------------------------

FARMWORKER JUSTICE; JAMES SIMPSON; STEPHANUS DE KLERK

   Amici Supporting Appellees

Appeal from the United States District Court for the Western District of North Carolina at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:23-cv-00096-MR-WCM)

1

Argued: September 25, 2024                    Decided: February 24, 2025

_____

Before KING, BENJAMIN and BERNER, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Berner wrote the opinion, in which Judge King and Judge Benjamin joined.

_____

**ARGUED:** Wendel Hall, III, HALL LAW OFFICE, PLLC, Washington, D.C., for Appellants. Alexandra Bridget McTague, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Steven A. Bader, Raleigh, North Carolina, Patrick H. Flanagan, CRANFILL SUMNER, LLP, Charlotte, North Carolina; Mark A. Stevens, CLARK HILL PLC, Washington, D.C., for Appellants. Brian M. Boynton, Principal Deputy Assistant Attorney General, William C. Peachey, Director, Glenn M. Girdharry, Assistant Director, Aaron S. Goldsmith, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Gregory S. Schell, SOUTHERN MIGRANT LEGAL SERVICES, Nashville, Tennessee; Douglas L. Stevick, TEXAS RIOGRANDE LEGAL AID, INC., Weslaco, Texas, for Amicus James Simpson. Michael T. Kirkpatrick, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Amici Farmworker Justice, James Simpson, and Stephanus De Klerk. Peter Murray, SOUTHERN MINNESOTA REGIONAL LEGAL SERVICES, St. Paul, Minnesota, for Amicus Stephanus De Klerk.

_____

Unpublished opinions are not binding precedent in this circuit.

BERNER, Circuit Judge

The H-2A visa program allows foreign farmworkers to obtain temporary employment in the United States. The Department of Labor (DOL) is required by statute to ensure that agricultural employers' use of this program does not depress the wages of domestic workers. *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), 1188(a)(1). To fulfill this requirement, the DOL sets "adverse effect wage rates" (AEWRs)—hourly rates below which employers cannot pay H-2A workers or their domestic counterparts. 20 C.F.R. §§ 655.120(a), 655.122(l). In 2023, the DOL promulgated a rule (the Rule) altering the methodology it uses to set AEWRs. 88 Fed. Reg. 12760 (Feb. 28, 2023). Unlike the DOL's previous methodology, which established a single AEWR for a given geographic region, the Rule takes a bifurcated approach that sets AEWRs by occupation and by region. The DOL expects wages of workers who perform specialized jobs such as logging and truck driving will increase under the Rule.

A group of farm owners and an H-2A filing agent (Employers) filed this lawsuit to block the DOL from enforcing the Rule. Employers allege that the Rule is arbitrary and capricious, in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). Specifically, Employers argue that the DOL failed to fulfill its alleged statutory obligations to consider the Rule's impact on (1) farm owners' costs, and (2) illegal immigration. Employers moved for a preliminary injunction and a temporary restraining order. The district court denied Employers' motions. *See USA Farm Labor, Inc. v. Su*, 694 F. Supp. 3d 693, 715 (W.D.N.C. 2023).

3

We conclude that the district court did not abuse its discretion in denying the preliminary injunction. A party seeking a preliminary injunction must satisfy each of the four factors articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Because the district court reasonably concluded that the balance of the equities and the public interest did not tip in favor of an injunction, we affirm.

## I. Background

In 2023, the DOL overhauled its methodology for calculating AEWRs. *See* 88 Fed. Reg. 12760. AEWRs establish the minimum hourly wage rates that U.S. employers must pay H-2A farmworkers and similarly employed domestic workers. 20 C.F.R. §§ 655.120(a), 655.122(l). "Employers seeking H-2A certification are required to pay the higher of the [AEWR], the prevailing wage, or the legal minimum wage." *Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014) (citing 20 C.F.R. § 655.120(a)). In setting AEWRs, the DOL must ensure that employers' access to foreign workers under the H-2A program does not depress the wages of U.S. workers. 8 U.S.C. § 1188(a)(1).

The DOL's express statutory obligations have not changed since the 1952 inception of the H-2 program, which ultimately split into the H-2A program for agricultural workers and H-2B program for non-agricultural workers. Congress created the H-2 program by enacting the Immigration and Nationality Act (INA). *See* Pub. L. No. 82-414, § 212(a)(14), 66 Stat. 163, 183 (1952). The INA, as originally enacted, allowed U.S. employers to hire foreign workers to fill temporary jobs when domestic workers were unavailable. It tasked

4

the DOL with helping administer the program: employers could not hire foreign workers under the H-2 program unless the Secretary of Labor certified that (1) there were not "sufficient workers in the United States who [were] able, willing, and qualified" to perform the desired work; and (2) the employment of foreign workers would not "adversely affect the wages and working conditions of the workers in the United States similarly employed." *Id.* To fulfill this statutory directive to protect U.S. workers' wages, the DOL in 1963 began setting AEWRs. *See* 54 Fed. Reg. 28037, 28040 (July 5, 1989).

Congress's 1986 passage of the Immigration Reform and Control Act (IRCA) amended the INA but did not meaningfully change the DOL's statutory obligations in setting AEWRs. *See AFL-CIO v. Brock*, 835 F.2d 912, 918 (D.C. Cir. 1987) ("Congress made absolutely no alteration to the statutory mandate that underlies AEWRs."). Like the INA, the IRCA requires only that the DOL certify (1) that there are not sufficient domestic "workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition," and (2) that "the employment of [foreign workers] in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). The IRCA, by its terms, does not require the DOL to consider any particular factors in setting AEWRs. "Congress, indeed, has never paid any attention to the

5

method or policy of calculating AEWRs . . . . [C]alculating AEWRs has been left entirely to the Department's discretion." *AFL-CIO*, 835 F.2d at 915.

Though the DOL enjoys broad discretion in setting AEWRs, it must adequately explain the rationale behind any new methodological choice. "When an agency's decision constitutes a change in position, the court must be satisfied that such a change in course was made as a genuine exercise of the agency's judgment." *Philip Morris USA, Inc. v. Vilsack*, 736 F.3d 284, 290 (4th Cir. 2013). "The agency must show that there are good reasons for [a] new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The DOL has altered its methodology for calculating AEWRs several times. "The 1987 [AEWR] regulations embodied one set of priorities. The 2008 regulations embodied another and very different pro-employer set of priorities. The 2009 [s]uspension and 2010 regulations then signaled a return, in the main, to the earlier 1987 emphasis on worker wage protection." *N.C. Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 771–72 (4th Cir. 2012) (Wilkinson, J., concurring) (internal citations omitted).

In 2023, the DOL adopted the Rule because it believed its former AEWR methodology was failing to adequately protect U.S. workers' wages. 88 Fed. Reg. 12787. In particular, the DOL was concerned that employers were taking advantage of the H-2A program to hire specialized workers at artificially low wage rates. *See* 88 Fed. Reg. 12761, 12783; Farmworker Justice Amicus Br. 6–7. Because the DOL's previous methodology set a single AEWR for all workers in a geographic region, regardless of occupation, employers

6

used the H-2A program to hire specialized workers—including truck drivers, mechanics, supervisors, loggers, and construction workers—at salaries reflective of the prevailing wage rates for less-specialized farm work like crop picking. *See* Farmworker Justice Amicus Br. 6–7. The DOL believed this loophole threatened the wages of U.S. workers. *See* 88 Fed. Reg. 12770–72.

The Rule made four changes, two of which are relevant to this case. First, under the Rule, the DOL will rely on a different source of wage data to calculate separate AEWRs for specialized occupations. 88 Fed. Reg. 12762. Under the old methodology, the DOL set one AEWR for each geographic region based on the Farm Labor Survey (FLS) conducted by the U.S. Department of Agriculture. 88 Fed. Reg. 12761–62. The FLS does not, however, collect wage information for non-farm jobs, such as truck driving and construction. 88 Fed. Reg. 12761. Under the Rule, the DOL will continue using FLS data to set a single regional AEWR for all H-2A jobs assigned to a Standard Occupational Classification (SOC) code that falls into the "field and livestock workers (combined)" category. 88 Fed. Reg. 12761. For H-2A jobs assigned SOC codes outside of that category, however, the DOL will calculate separate AEWRs using data from the Occupational Employment and Wage Statistics (OEWS) survey published by the Bureau of Labor Statistics. 88 Fed. Reg. 12762, 12764.

The DOL does not expect this change to impact most employers. According to the DOL, the "vast majority" of H-2A jobs are properly classified under the six SOC codes that comprise the "field and livestock workers (combined)" category. 88 Fed. Reg. 12781.

7

The DOL will continue calculating AEWRs for those jobs based on the FLS, the same methodology it employed prior to issuing the Rule. 88 Fed. Reg. 12775. The small minority of H-2A jobs that fall outside of the "field and livestock workers (combined)" category are expected to see wage increases because the OEWS survey, upon which their AEWRs will be based, consistently reports higher wages than the FLS survey. 88 Fed. Reg. 12771–72, 12778.

The Rule's second change, which relates to the first, instructs the individuals reviewing H-2A applications to assign multiple SOC codes to jobs that do not fit into a single SOC code. 88 Fed. Reg. at 12778–79. These are jobs involving a diverse array of distinct duties. The Rule provides that workers performing jobs classified under multiple SOC codes must be paid the AEWR corresponding to the highest applicable SOC code. 88 Fed. Reg. 12778–79. If a job description includes both apple picking and semi-truck driving, for example, the position will be assigned two SOC codes, and the worker must be paid the AEWR for the higher code—in this case, truck driving. *See* 88 Fed. Reg. 12783. A job will be assigned multiple SOC codes only if no SOC code is broad enough to encompass the various duties performed in a job. 88 Fed. Reg. 12780–81. Because individual SOC codes cover a wide range of duties, the DOL anticipates that very few jobs will be assigned multiple SOC codes. 88 Fed. Reg. 12776–77, 12785.

The DOL adopted the Rule despite certain groups' vocal opposition to these changes. In response to the DOL's 2021 publication of its notice of proposed rulemaking, trade associations and farm owners submitted comments arguing that the Rule would

8

impose unreasonable costs on employers. 88 Fed. Reg. 12765. Commenters asserted that the DOL's published cost estimate was inadequate, as it failed to fully account for the increased costs employers would face. Further, some commenters—including one of the plaintiffs in this case—alleged that these increased wage costs would compel farm owners to avoid the H-2A program entirely and instead hire undocumented workers. *See* 88 Fed. Reg. 12765; Appellants' Opening Br. 24–25.

Employers filed this lawsuit to block the DOL from enforcing the Rule. The Rule went into effect in March 2023. Employers moved for a preliminary injunction two months later. In August 2023, the DOL filed a motion to dismiss for lack of standing. Shortly thereafter, Employers moved for a temporary restraining order. The district court denied all three motions in September 2023. *USA Farm Labor*, 694 F. Supp. 3d at 707–15. The district court found that Employers possessed standing but failed to satisfy any of the four preliminary injunction requirements. *Id.* Employers appeal only the denial of the preliminary injunction, not the denial of the temporary restraining order. This court has jurisdiction to review an order denying a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

## II. Standard of Review

We review the district court's denial of a preliminary injunction for abuse of discretion. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019). "[A]buse of discretion is a deferential standard." *Id.* Though a "clear error in

9

factual findings or a mistake of law is grounds for reversal," we may not reverse "so long as 'the district court's account of the evidence is plausible in light of the record viewed in its entirety.'" *Id*. at 213 (quoting *Walton v. Johnson*, 440 F.3d 160, 173 (4th Cir. 2006) (en banc)). If the district court "applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute," no abuse of discretion occurred. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 192 (4th Cir. 2013) (en banc).

## III. Analysis

To obtain a preliminary injunction, a movant must establish that: (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in their favor; and (4) an injunction would be in the public interest. *Winter*, 555 U.S. at 20. When the government is the nonmovant, the last two factors merge. *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The movant must satisfy all of the *Winter* factors to prevail. *Henderson v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) ("*Winter* made clear that *each* of these [ ] factors must be satisfied to obtain preliminary injunctive relief." (emphasis in original)).

The district court did not abuse its discretion by concluding that the balance of the equities and the public interest did not favor an injunction. Because Employers' failure on any *Winter* factor is fatal, we decide this case without analyzing the remaining factors.

10

As the district court recognized, enjoining the Rule would harm H-2A workers, domestic workers, and certain employers. The district court explained: "The requested injunction could cause at least as much harm to these third-party workers, who would be deprived of wages that they are entitled to under the [ ] Rule, as a denial would harm the Plaintiffs, who would potentially avoid having to pay these wages." *USA Farm Labor*, 694 F. Supp. at 714.

We agree with the district court's reasoning. Foreign workers who entered the United States under H-2A visas did so with an expectation that the Rule would determine their wages. Without those expected wages, some may feel compelled to depart the country or seek other employment. Enjoining the rule "would inject a degree of uncertainty into the H-2A program" that could injure some employers. *Id*. Even if employers promised to maintain H-2A workers' existing wage rates, workers might view such promises as less reliable than the guarantee of an AEWR set by the Rule. The inability to retain a full workforce would inflict hardship on farm owners.

Domestic workers have similar reliance interests. AEWRs set the hourly minimum wage rates for both H-2A workers and their domestic counterparts. *See* 20 C.F.R. §§ 655.120(a)(1), 655.122(l). If the Rule has indeed resulted in higher AEWRs for certain domestic farm workers, as both parties projected it would, those workers are among the Rule's direct beneficiaries. Some, no doubt, have taken certain farm jobs in part because of the promise of these higher wage rates. Domestic workers in specialized occupations like logging and construction are also among the Rule's beneficiaries.

11

According to the DOL and amicus, the Rule was intended to close the loophole that allowed employers to hire H-2A workers to perform these jobs at artificially low wages. 88 Fed. Reg. 12761; Farmworker Justice Amicus Br. 7–8. Domestic workers in specialized fields and the businesses that employ them benefit from the Rule because they are no longer forced to compete with companies that underpay workers by taking advantage of regulatory gaps.

Employers do not meaningfully respond to the district court's analysis of the balance of equities and the public interest. Instead, they simply assert that "the balance of equities and the public interest favor an injunction" because there is "no public interest in perpetuating an unlawful government program." Appellants' Opening Br. 37. This conclusory argument improperly collapses the first *Winter* factor—likelihood of success on the merits—with the merged balance of equities and public interest factor. Courts "considering whether to impose preliminary injunctions must separately consider each *Winter* factor." *Pashby v Delia*, 709 F.3d 307, 321 (4th Cir. 2013). Employers' circular reasoning—that the program is against the public interest because it is unlawful—is nothing more than a restatement of their likelihood of success argument. Under Employers' logic, the merged final *Winter* factor would be superfluous in any lawsuit seeking to enjoin a government program. That is not the proper test.

IV. Conclusion

12

The district court reasonably concluded that the balance of the equities and the public interest did not tip in favor of an injunction. The denial of Employers' motion to enjoin the Rule was not an abuse of discretion. Though we need not address the remaining *Winter* factors,[1] nothing in this opinion should be read to cast doubt on the other parts of the district court's analysis.

*AFFIRMED*

---

[1] Where a district court denies injunctive relief based on its erroneous analysis of a single *Winter* factor, a court of appeals "must perform [its] own assessment of the factors not addressed by the district court." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 171 (4th Cir. 2019); *see also Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023). Here, the district court analyzed each *Winter* factor. Because the district court did not abuse its discretion in concluding that the merged balance of equities and public interest factor did not favor an injunction, we need not evaluate the remaining factors. *See Winter*, 555 U.S. at 23-24, 31.

13